BAYLOR UNIVERSITY MEDICAL CENTER, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of the U.S. Department of Health and Human Services, Defendant.

HARRIS HOSPITAL–METHODIST, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of the U.S. Department of Health and Human Services; Blue Cross Association; and Group Hospital Services, Inc., Defendants.

Civ. A. Nos. 3–81–0266–H, 3–82–0262–H.

United States District Court, N.D. Texas, Dallas Division.

April 25, 1983.

Robert B. Cook, Jr., Dallas, Tex., for plaintiff in Civ. A. No. 3–81–0266–H.

Stafford Hutchinson, Asst. U.S. Atty., Dallas, Tex., for defendant in Civ. A. No. 3–81–0266–H.

Mike McKool, Jr., Charles W. Cunningham, Johnson, Swanson & Barbee, Dallas, Tex., for plaintiff in Civ. A. No. 3–82–0262–H.

Paula Mastropieri-Billingsley, Asst. U.S. Atty., Dallas, Tex., for defendants in Civ. A. No. 3–82–0262–H.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

These cases are before the Court on Plaintiffs' and Defendants' cross motions for summary judgment, and the briefs in support and in opposition thereto. The cases involve identical questions of law and are based on the same undisputed material facts. The cases are hereby CONSOLIDATED on the Court's own motion. The Court is of the opinion that Plaintiffs' motions should be, and they are hereby, GRANTED. Defendants' motions are hereby DENIED.

### Facts

These cases arise under the Medicare Act, which provides that hospitals furnishing services to medicare patients shall be reimbursed by the Secretary of Health and Human Services ("the Secretary") for their "reasonable costs." 42 U.S.C. § 1395x(v)(1)(A). In these cases, Plaintiffs submitted statements of "reasonable costs" for the fiscal year ending June 30, 1978, which were rejected by the Secretary's Fiscal Intermediary. The Intermediary found that the Plaintiffs' submissions erroneously failed to follow a certain interpretation of the relevant "reasonable cost" regulations. The interpretation in question has been promulgated since 1977[1] and is found in Section 2345 of the Secretary's Provider Reimbursement Manual ("the Manual").

1. The Secretary asserts that Section 2345 is merely a clarification of previous policies, whereas Plaintiffs assert that it constitutes a

Plaintiffs appealed the Fiscal Intermediary's decisions to the Provider Reimbursement Review Board ("PRRB"). In each case, the PRRB unanimously overturned the Intermediary's decision. The PRRB held that the application of Section 2345 in these cases results in a misapportionment of costs such that the cost of caring for medicare patients is passed on to non-medicare patients. *Harris Hospital,* Transcript ("Tr.") at 49; *Baylor University,* Tr. at 31–32. The PRRB found that such misapportionment violates the statutory mandate that the costs of medicare patients should not be borne by non-medicare patients. *See, e.g.,* 42 C.F.R. 405.452(e)(1).

On the Secretary's own motion, the PRRB decisions were reviewed by the Deputy Administrator of the Health Care Financing Administration ("the Deputy Administrator"), to whom the Secretary has delegated authority for such review. The Deputy Administrator reversed the PRRB decisions. The Deputy Administrator's decisions constitute final decisions of the Secretary, from which Plaintiffs appeal.

### The Substantive Issue

The acceptable methods for determination of "reasonable costs" vary depending on the type of costs at issue. These cases involve the Secretary's method for determination of the reimbursable costs for "routine services". "Routine services" are defined as "the regular room, dietary and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made." 42 C.F.R. § 405.-452(d)(2). The costs of routine services are apportioned between medicare and non-medicare patients based on the following formula:

$$(1) \quad \frac{\text{Total Cost of Routine Services}}{\text{Total No. of Inpatient Days of Care}} = \text{Average Cost of Routine Services Per Day}$$

$$(2) \quad \begin{array}{l}\text{(Average Cost Per Day) X} \\ \text{(No. of Days of Care Rendered} \\ \text{to Medicare Beneficiaries)}\end{array} = \begin{array}{l}\text{Amount Reimbursed by} \\ \text{Medicare}\end{array}$$

reversal of previous policies. The Court need not address that issue in these cases.

*See* 42 C.F.R. § 405.452(d)(7).

The operation of this formula is best explained through example. Assume that a hospital expended $10,000 in routine services. That $10,000 would constitute the "total cost of routine services" portion of the formula. The "total number of inpatient days of care" would be determined by counting the number of patients receiving care at midnight each day. Each patient receiving care at the midnight census is counted as one "inpatient day", even if the patient arrived at 11:55 p.m. If there are 100 inpatient days, the Secretary would divide $10,000 by 100 to get an average cost figure of $100 per day.

The Secretary next multiplies the average cost per day by the number of inpatient days incurred by medicare patients. If there are 50 medicare inpatient days, the Secretary reimburses the hospital 50 × $100 or $5,000. The non-medicare patients pay the other $5,000, also at a rate of $100 per day.

It is uncontested that hospitals may not include the costs of their labor/delivery areas in their "total cost of routine services" figure. The labor/delivery areas service women who are in the various stages of labor. These women do not occupy routine beds and receive no routine services. They are billed for no routine services. They are kept completely separate from the routine areas of the hospitals. Under the applicable regulations, and even under the Manual, all of the services provided to the labor/delivery patients are "ancillary" as opposed to routine. *See, e.g.,* Manual, § 2202.8. Thus, the Secretary has clearly determined that labor/delivery area costs cannot be included in the routine costs formula.

Despite the Secretary's determination that labor/delivery services are not routine, Section 2345 requires that labor/delivery patient days be counted in the "total number of inpatient days of care" portion of the routine cost formula. The effect of such an imbalanced increase can be significant. For instance, in the above cited example, an addition of 20 labor/delivery patients would have the following effect: the $10,000 "total cost" would remain constant. The $10,000, however, would be divided by 120, rather than 100, to produce an "average cost per day" of about $83. Medicare would reimburse the hospital for $83 × 50 or $4,150. To cover the remainder of the total $10,000 cost, the 50 non-medicare patients would have to pay $5,850, or $117 per day. Thus, application of Section 2345 results in the subsidization of medicare patients by non-medicare patients. Such cross-subsidization, as noted by the PRRB, is barred by numerous medicare regulations. *See, e.g.,* 42 C.F.R. § 405.452(e)(1).

The Court is cognizant that in *Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1211 (5th Cir.1980), the Fifth Circuit upheld the Secretary's interpretation of a medicare regulation, despite a "strong" cross-subsidization argument. *Id.* at 1211. These cases, however, are clearly distinguishable from *Homan & Crimen* in critical respects. In *Homan & Crimen,* the Secretary's interpretation was "grounded on long-established principles . . . ." *Id.* To have overturned the Secretary's position would have been to require the Secretary to disregard "hornbook" law. *Id.* The Fifth Circuit therefore found that Secretary's interpretation was "reasonable" and that it must be upheld.

The interpretation at issue here fails to meet the reasonableness test. Indeed, it contradicts "long-established principles" and "hornbook" rules. In order to reasonably compute "average costs per day", one must match the total costs with the days in which those costs were incurred. Assume that an accountant seeks to compute average costs per day for industrial Plant A. The accepted method would be for him to divide the total costs of Plant A by the total days Plant A was in operation. If he also adds in the days of operation for another plant, Plant B, yet fails to include Plant B's costs, his "average cost per day" figure for Plant A will be totally distorted. Yet, the Secretary claims that an analogous mismatching in medicare calculations is reasonable.

In essence, the Secretary is asserting that labor/delivery services are "non routine" for purposes of computing costs, but are "routine" for purposes of computing days of care. *Compare* Section 2345 *with* Section 2208.8. The Secretary's positions are obviously inconsistent. Granted, the Court normally must give strong deference to an agency's interpretation of its own regulations. *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). That deference, however, may be affected by the interpretation's " 'consistency with earlier and later pronouncements' ". *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974) *quoting Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). In this case, the Secretary's inconsistent treatment of labor/delivery services weakens the persuasive force of Section 2345.

The Secretary's position on the labor/delivery issue has also been inconsistent in another respect. In two recent decisions, the Deputy Administrator found that labor/delivery patient days should not be included in the routine costs formula. *See Winter Park Memorial Hospital v. Blue Cross Association,* 4 CCH Medicare and Medicaid Guide ¶ 32,224 (Aug. 8, 1982); *Mercy Hospital and Medical Center v. Blue Cross Association,* PRRB Decision 82–D126(R) (Aug. 10, 1982). Those cases involve facts virtually identical to the facts in the cases at bar. *Id.* The Deputy Administrator has subsequently reopened and reversed those decisions to require the inclusion of labor/delivery patient days in the formula. Nevertheless, the existence of the original decisions indicates a lack of consistency within the agency.

The Secretary contends that Section 2345 is reasonable in that it is a rational interpretation of the relevant regulations. The regulation establishing the routine costs reimbursement formula states that the total costs of routine services shall be divided by the "total number of inpatient days of care." 42 C.F.R. § 405.452(d)(7). Regulation 405.452 does not define the phrase "inpatient days of care." Another regulation, one which deals with the cost formula for nurses salaries, however, defines an "inpatient day" as "a day of care furnished to any inpatient." 42 C.F.R. § 430(b)(5). Based on that definition of "inpatient day", the Secretary argues as follows: (1) the routine cost formula refers to "inpatient days"; (2) an "inpatient day" includes *any* inpatient; (3) labor/delivery patients are "inpatients"; (4) therefore, labor/maternity patients must be included in the routine cost formula.

The Secretary's argument, at first glance, appears logical. Upon closer examination, however, the argument is untenable. The Secretary, in defining the phrase "inpatient days of care" as used in 42 C.F.R. § 405.-452(d)(7), looks at only half of the relevant phrase: "inpatient days". Looking solely at the phrase "inpatient days", it seems logical to include all inpatients. The regulation, however, refers to "inpatient *days of care*". Section 405.452(d)(7). The regulation is designed to determine the average cost per *day of routine care*. In determining the average cost per day of routine care, the only reasonable interpretation of the phrase "day of care" is "day of routine care." Labor/delivery patients do not receive routine care. Therefore, it is unreasonable to count a day of labor/delivery care as a day of routine care.

The Secretary makes two additional arguments in favor of Section 2345, both of which must be rejected. First, the Secretary argues that Plaintiffs' position is inconsistent. Plaintiffs dispute the Secretary's inclusion of labor/delivery patients in the "routine days" figure, but do not dispute the inclusion of patients found in other ancillary service areas, such as the x-ray lab, at the time of the midnight census. Patients in the x-ray lab and the other ancillary hospital areas, however, have been admitted to the routine services area. Although they are temporarily away from their routine beds, they are still simultaneously receiving routine services such as bed changing and meal preparation. Those routine costs will be included in the total routine cost figure. To include those pa-

tients in the total number of routine patient days, therefore, does not create a mismatch. Thus, Plaintiffs' failure to contest the inclusion of other "ancillary" patients in the total routine days figure does not support the argument that Section 2345 is reasonable.

Finally, the Secretary argues that Section 2345 is "reasonable" because patients in the labor/delivery area on a particular day will probably be in the routine services area by the next day. The Secretary asserts that because some patient days will be split between the labor/delivery area and the routine services area, Section 2345 is merely an acceptable form of averaging. The defect in that reasoning, however, is that, under the current system, any "split" days are already counted as routine days. Thus, the only patient days at issue here are those in which *no* time is spent in the routine services area.

The reason that all "split" days are counted as routine days is because of the order in which the maternity patients progress from area to area. The maternity patients go first to the labor/delivery area. Therefore, if they are still in that area at the midnight census count, they will have received only labor/delivery services. If, however, they move into the routine services area at anytime during the next day, then they will be counted as routine services patients at the next midnight census count. Assume, for example, that a woman enters the labor/delivery area at 5:00 p.m., Tuesday, and moves to routine services at 4:00 a.m., Wednesday. At the time of Tuesday's midnight census, she will have received only labor/delivery services, and she will be counted as a labor/delivery patient. At Wednesday's census, however, she will be counted as a routine services patient, even though part of the day was spent in the labor/delivery area. Given that all of the days "split" between labor/delivery and routine services are already counted as routine days, the Secretary's argument concerning the need to "average" is unreasonable.

The Court is aware that several district courts have upheld Section 2345. *See Mar-*

*tin Luther Hospital v. Schweiker,* No. CV 81–6311 AWT (C.D.Cal., filed Aug. 17, 1982); *International Philanthropic Hospital Foundation,* No. CV 81–115 MRP (C.D.Cal. filed July 19, 1982); *St. Mary of Nazareth Hospital Center v. Schweiker,* No. 80–3280 (D.D.C. filed Nov. 9, 1981). The Court has carefully considered those decisions and respectfully disagrees with them for the reasons stated above. The Court finds that *Mt. Diablo Hospital District v. Davis,* 559 F.Supp. 1042 (N.D.Cal.1983), which reverses the Secretary's decision on the issue in question, is the better reasoned opinion.

The Court is of the opinion that Section 2345 is not reasonable and that it is not reasonably consistent with the underlying statute. Although the medicare regulations are complex "[w]e nevertheless cannot abdicate our role in the regulatory process." *Gulf South Insulation v. United States Consumer Product Safety Commission,* 701 F.2d 1137 (5th Cir.,1983). A review of the complete records shows that the Secretary's final decisions in these cases are arbitrary, capricious and unsupported by substantial evidence. *See* 42 U.S.C. § 1395oo (f)(1); Administrative Procedure Act, § 706(2).

Plaintiffs' Motions for Summary Judgment are hereby GRANTED.

Defendants' Motions for Summary Judgment are hereby DENIED.

SO ORDERED.