**LODI COMMUNITY HOSPITAL;
Chico Community Hospital,
Plaintiffs–Appellants,**

v.

**Donna E. SHALALA, Secretary of
Health and Human Services,
Defendant–Appellee.**

**No. 95–15958.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1996.

Decided Aug. 30, 1996.

Patric Hooper, Hooper, Lundy & Bookman, Los Angeles, California, for plaintiffs-appellants.

Anthony J. Steinmeyer, Sean A. Lev, United States Department of Justice, Washington, D.C., for defendant-appellee.

Before WIGGINS and TROTT, Circuit Judges, and VANCE,* District Judge.

WIGGINS, Circuit Judge:

## OVERVIEW

Lodi Community Hospital and Chico Community Hospital, both authorized providers of Medicare services, appeal the district court's grant of summary judgment for the Secretary of Health and Human Services, upholding the Secretary's disallowance of reimbursement for interest on a loan incurred by Paracelsus Healthcare Corporation to purchase 100 percent of appellants' stock. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

The facts are undisputed. In 1985, NME Hospitals, Inc. negotiated with Paracelsus, a private for-profit health care organization that owns or leases and operates hospitals, to sell Lodi Community Hospital and Chico Community Hospital to Paracelsus. The parties structured the sale through a stock transfer, whereby NME formed two subsidiary corporations—Lodi Community Hospital, Inc. and Chico Community Hospital, Inc.—and assigned all the assets and some of the liabilities of the hospitals to the two subsidiary corporations. NME then sold all the stock in both corporations to Paracelsus for $37 million.[1] Paracelsus financed the purchase with a bank loan.

Afterward, Paracelsus treated the transaction as a purchase of assets on its tax reports and financial statements. In addition, the Lodi and Chico hospitals, both authorized Medicare providers,[2] filed Medicare cost reports for fiscal years ending 1986 to 1991, claiming reimbursement for interest on the loan incurred by Paracelsus to purchase the hospitals' stock. The fiscal intermediary, a private non-government agent for the Department of Health and Human Services that is responsible for the daily administration of the Medicare program and reviews providers' reimbursement claims, disallowed the hospitals' claim for reimbursement of approximately $7 million in interest costs. In this case, Blue Cross and Blue Shield of California served as the fiscal intermediary. Paracelsus appealed the intermediary's decision to the Department's Provider Reimbursement Review Board, which held that the purchase of stock is not a reimbursable cost under the Department's regulations and affirmed the intermediary's adjustments. In July 1994, the Secretary, through the Administrator of the Health Care Financing Administration, declined to review the Board's decision.

Thereafter, Lodi and Chico commenced this action, alleging that the Secretary's decision is contrary to *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123 (9th Cir.1980), and *American Medicorp, Inc. v. Schweiker*, 714 F.2d 68 (9th Cir.1983) (per curiam). The district court distinguished the instant case from *Pacific Coast* and *American Medicorp*, and granted summary judgment for the Secretary. Lodi and Chico timely appeal.

## DISCUSSION

### I. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Regents of the Univ. of California v. Shalala*, 82 F.3d 291, 294 (9th Cir.1996), *petition for cert. filed*, 65 U.S.L.W. 3085 (U.S. July 16, 1996) (No. 96–90). The Administrative Procedure Act, 5 U.S.C. §§ 701–06 ("APA"), governs judicial review of Medicare reimbursement disputes under 42 U.S.C. § 1395oo(f)(1). *Id.* "Under the APA, '[r]eview is limited to determining whether

---

* Hon. Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation.

1. Paracelsus has since sold its stock in Lodi Community Hospital, Inc.

2. An entity is an authorized Medicare provider by contract with the Secretary. Such contracts arise under § 1866 of the Social Security Act, 42 U.S.C. § 1395cc, and are known as 1866 agreements.

the Secretary's action was arbitrary, capricious, an abuse of discretion, not in accordance of the law, or unsupported by substantial evidence on the record taken as a whole.'" *Id.* (quoting *Vallejo Gen. Hosp. v. Bowen,* 851 F.2d 229, 231 (9th Cir.1988)).

■ In reviewing an agency's interpretation of its regulations, "we look to the plain language of the regulation. The words of the regulation must be 'reasonably susceptible to the construction placed upon them by the Secretary, both on their face and in light of their prior interpretation and application.'" *Id.* (citation omitted). "'[T]he Secretary's construction must be reviewed in relation to the governing statute.'" *Id.* (citation omitted). "'Agency regulations must be consistent with and in furtherance of the purposes and policies embodied in the Congressional statute which authorize them.'" *Id.* (citation omitted).

## II. ANALYSIS

■ The Medicare program, as established by Title XVIII of the Social Security Act (42 U.S.C. §§ 1395–95ccc), reimburses authorized Medicare providers for the "reasonable costs" of providing Medicare services. Reasonable costs are generally defined as:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included in determining such costs for various types or classes of institutions, agencies, or services.

42 U.S.C. § 1395x(v)(1)(A). The Secretary promulgated 42 C.F.R. § 405.419, recodified as § 413.153, which further defined reasonable costs as "[n]ecessary and proper interest on both current and capital indebtedness." 42 C.F.R. § 413.153 (1995). Interest costs "incurred for the use of borrowed funds," *id.* § 413.153(b)(1), are necessary if "[i]ncurred on a loan made to satisfy a financial need of the provider" and "made for a purpose reasonably related to patient care." *Id.*

§ 413.153(b)(2)(i)-(ii). Interest costs are proper if incurred at a reasonable interest rate and "paid to a lender not related through control or ownership." *Id.* § 413.153(3)(i)-(ii). The regulations expressly provide, however, that loans made to finance capital stock acquisitions are not reasonably related to patient care, *id.* § 413.153(d)(1)(ii), and therefore are not reimbursable.

Appellants contend that the district court erred in treating Paracelsus' purchase of Lodi and Chico Community Hospitals merely as a non-reimbursable stock acquisition, subject to the limitation of § 413.153(d)(1)(ii). According to appellants, NME's transfer of the hospitals' assets to Lodi Community Hospital, Inc. and Chico Community Hospital, Inc. and Paracelsus' acquisition of both corporations' stock transformed the transaction from a stock purchase to an assets purchase. As a result, § 413.153(d)(1)(ii) should not preclude finding Paracelsus' interest expenses reasonably related to the provider's patient care costs and reimbursable. The Secretary contends that the NME–Paracelsus transaction was merely a stock transfer because, based on corporate principles, Paracelsus was the stockholder and the hospitals remained as the legal owner of their assets. The Secretary further contends that the policy of treating transfers of assets and transfers of stock differently is lawful.

Both parties contend that their positions are supported by *Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123 (9th Cir. 1980), and *American Medicorp, Inc. v. Schweiker,* 714 F.2d 68 (9th Cir.1983) (per curiam). Appellants, however, read these cases too broadly. Unlike the instant case, *Pacific Coast* and *American Medicorp* involved situations in which the plaintiffs eventually owned the providers' assets, even though the transactions initially involved stock purchases. It is for that reason only that the transaction was treated as a purchase of assets.

In *Pacific Coast,* stockholders of two Medicare providers entered into an agreement where Pacific Coast Medical Enterprises (PCME) exchanged PCME stock for 100 per-

cent of the other provider's stock. After closing this exchange, PCME immediately took over the operations of the acquired hospital and liquidated that hospital nine months later. The assets of the dissolved corporation became PCME's assets. 633 F.2d at 127. Thereafter, PCME sought reimbursement for capital depreciation of the acquired hospital's assets.[3] The Secretary denied PCME's request because (1) the initial transaction was only a stock purchase and (2) after the dissolution of the acquired hospital, reimbursement is not available for assets acquired from a related organization. *Pacific Coast*, 633 F.2d at 129. This court found that the two events-the stock purchase and dissolution of the acquired hospital, which resulted in transferring the hospital's assets to PCME-should be treated as "a single purchase of an ongoing provider." *Id.* at 136. The court acknowledged that "this method of acquisition is a common occurrence in this country's corporate business practice and is an accepted method for the purchase of assets." *Id.* at 132. The transaction was deemed a single transfer of assets and therefore the preclusion against reimbursement for assets from a related organization was not applicable. *Id.* at 135 (holding that "[w]hen the PCME transaction is properly viewed as a single acquisition of assets," the Secretary's interpretation of its regulations was "arbitrary and erroneous").

*American Medicorp* also involved an initial stock acquisition where American Medicorp, Inc. ("AMI"), through its wholly owned subsidiary, acquired 100 percent of Estudillo Properties, Inc., an authorized Medicare provider. On the following day, AMI "merged its subsidiary into Estudillo, with Estudillo the surviving corporation." 714 F.2d at 69.

The court found *Pacific Coast* controlling and the fact that the acquired corporation survived the merger with AMI's subsidiary to be immaterial. "The end result was the same as the purchase in *Pacific Coast*—the two corporate entities involved (AMI's subsidiary and the acquired corporations) merged and the assets remained in the surviving corporation." *Id.* at 70. The court again acknowledged that "[a] 100% stock purchase and subsequent dissolution of the purchased corporation is a common method of acquisition of assets." *Id.*

Here, Paracelsus never acquired the assets of Lodi and Chico Community Hospitals. Appellants' contention that the two cases above hold that the stock acquisition and *any* assets transfer (in this case, the transfer of the hospitals' assets from NME to Lodi Community Hospital, Inc. and Chico Community Hospital, Inc.) would convert a stock purchase into an assets transfer lacks merit.[4] The rationale of *Pacific Coast* and *American Medicorp* is not that any stock acquisition and assets transfer will convert a purchase of stock into a purchase of assets. *See Richey Manor, Inc. v. Schweiker,* 684 F.2d 130, 134 (D.C.Cir.1982) (discussing analysis in *Pacific Coast*). Only an actual transfer of the provider's assets to the stock purchaser would make the stockholder the owner of the provider's assets. *See American Medicorp,* 714 F.2d at 70; *Pacific Coast,* 633 F.2d at 136. Although the providers' assets changed hands here, an assets transfer to the providers *prior* to Paracelsus' stock purchase does not alter the fact that the hospitals' assets remained with the providers even after Paracelsus bought 100 percent of Lodi's and Chico's stock. *See Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1207 (5th Cir.1980)

---

**3.** Capital depreciation is generally a reimbursable expense. *See* 42 C.F.R. § 413.134. Such depreciation is based on the asset's "historical cost," the cost actually incurred by the Medicare provider. When assets are transferred, the assets are revalued (i.e., the cost basis is "stepped up"), allowing PCME to increase (step-up), for Medicare accounting purposes, the value of the acquired provider's assets to the cost of the assets to PCME. The seller would be required to repay Medicare for any excess depreciation costs it had previously claimed, *id.* § 413.134(f), while the provider who acquires the assets depreciates them according to the amount paid. "As a result

of this increased cost basis, PCME may submit higher reimbursement claims for depreciation and return on invested capital than it would if forced to use as a cost basis the original cost of the assets to" the acquired health care provider. *Pacific Coast,* 633 F.2d at 127.

**4.** We also reject appellants' contention that the Provider Tie-in Notice amounts to the Secretary's recognition that Paracelsus owns the assets in Lodi and Chico hospitals. This notice merely reflects the manner in which the providers chose to report ownership.

("Under well-established principles of corporate law, the corporation, not the shareholders, is the owner of the corporate assets."), *cert. denied*, 450 U.S. 975, 101 S.Ct. 1506, 67 L.Ed.2d 809 (1981). Even NME and Paracelsus treated the transaction at issue as a stock sale for some Medicare purposes. NME and Paracelsus purposely structured the deal as a stock purchase so that NME did not need to revalue Lodi's and Chico's assets to account for any excess capital depreciation costs (approximately $1.6 million), which NME would be required to pay to the government upon a sale of assets, while Paracelsus would not be able to step up the cost basis of the assets for Medicare accounting purposes. Paracelsus' intent to operate the provider hospitals is irrelevant under the regulations and case law if it does no more than acquire the providers' stock.[5]

Because Paracelsus took no affirmative step to acquire more than appellants' stock, this case is more analogous to cases where 100 percent stock purchases were deemed not to be purchases of assets. *See Richey Manor*, 684 F.2d at 134–35 (holding that purchase of 100 percent of stock and subsequent change of the status of the facility from for-profit to not-for-profit did not amount to a purchase of assets so as to allow reimbursement of depreciation costs); *Homan & Crimen*, 626 F.2d at 1207–09 (holding stock purchase without subsequent liquidation was not a purchase of assets and disallowance of reimbursement for interest costs on loan to finance purchase of provider's stock was permissible because loan neither satisfied provider's financial needs nor was reasonably related to patient care).

■ Appellants next argue that courts have found the Secretary's distinction between assets and stock purchases for reimbursement purposes to be arbitrary and capricious. Again, appellants' assertion is based on a misreading of case law. They incorrectly cite to *PIA–Asheville, Inc. v. Bowen*, 850 F.2d 739 (D.C.Cir.1988), in support of their argument. Like *Pacific Coast*

and *American Medicorp, PIA–Asheville* involved an initial stock acquisition followed by a liquidation of the acquired corporations and distribution of those corporations' assets to the purchaser. And like this circuit, the D.C. Circuit held that such a transaction was a purchase of assets and the Secretary erred in treating the transaction simply as a stock purchase. *Id.* at 741–42. We have not found any case where the Secretary's distinction has been held to be per se arbitrary and capricious. In fact, the distinction is consistent with the Medicare statute. For instance, the Medicare statute defines reasonable costs as costs "actually incurred." 42 U.S.C. § 1395x(v)(1)(A). Because the reimbursement sought by appellants is available only to providers, it is reasonable to construe § 1395x(v)(1)(A) as limiting reasonable costs to costs actually incurred by the provider or at least incurred on its behalf. *See Homan & Crimen*, 626 F.2d at 1211. Here, the interest costs were incurred to finance Paracelsus' acquisition of the appellant providers' stock. Such costs were not incurred on behalf of appellants and the price of the stock did not reflect any benefit to appellants. We reject appellants' argument that the regulatory distinction between purchase of assets and stock in this context is inconsistent with the Medicare statute.

Lastly, appellants argue that the agency's own Provider Reimbursement Manual allows certain costs incurred by the home office, such as Paracelsus, to be allocated to the provider and be deemed incurred by the provider. Although the Manual allows some costs to be allocated to the provider, such as costs incurred by the home office to relocate a provider (*see* § 2150.2.E.1 of the Manual), § 2150.2.B.3 of the Manual expressly disallows costs related to the acquisition of capital stock of a provider.

In sum, we find that the instant case is distinguishable from *Pacific Coast* and *American Medicorp*, and uphold the Secretary's decision.

---

5. Moreover, the fact that Paracelsus treats the stock purchase as an assets purchase for tax and accounting purposes is of no matter. *See Pacific Coast*, 633 F.2d at 133 (stating that "the Secretary is not bound by the practices of other governmental entities or by accounting practice or common usage").

CONCLUSION

For the foregoing reasons, we AFFIRM. We DENY the Secretary's oral request for judicial notice of wholly-owned subsidiaries unrelated to the corporations involved in this appeal.