**BAYLOR UNIVERSITY MEDICAL CENTER, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of U.S. Department of Health and Human Services, Defendant.**

**Civ. A. No. 3–82–0986–H.**

United States District Court, N.D. Texas, Dallas Division.

Sept. 13, 1983.

Catherine A. Gerhauser, Burford & Ryburn, Dallas, Tex., for plaintiff.

Mary Ann Moore, Asst. U.S. Atty., Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

### Introduction

This case is before the Court on the parties' cross-Motions for Summary Judgment.

The Court, after reviewing the record and the parties' Motions, is of the opinion that Defendant's Motion for Summary Judgment should be DENIED and Plaintiff's Motion for Summary Judgment should be GRANTED.

## Facts

Plaintiff ("Baylor") filed its annual cost report for fiscal year ending ("FYE") June 30, 1979, pursuant to Defendant's (the "Secretary") regulation 42 C.F.R. § 405.453(f). In its FYE 1979 cost report Baylor claimed a return on its net invested equity capital and computed its average per diem costs exclusive of labor and delivery room days. Baylor's fiscal intermediary disallowed Baylor's claim for a return on equity and recomputed Baylor's average per diem costs inclusive of labor and delivery room days. The fiscal intermediary's action resulted in a reduction in Baylor's Medicare reimbursement in the amount of $2,629,259.

Baylor requested and received a hearing before the Secretary's Provider Reimbursement Review Board ("PRRB"). The PRRB affirmed the intermediary's disallowance of return on equity costs and reversed the intermediary on the labor and delivery area issue. The Secretary's Deputy Administrator, upon review of the PRRB's decision, held in favor of the Secretary on both issues, thus reinstating the intermediary's decision. The Deputy Administrator's decision represents the final decision of the Secretary which is reviewable by this Court pursuant to 42 U.S.C. § 1395oo.

## Labor/Delivery Area Costs

■ This issue, involving the same parties for a prior fiscal year (FYE 1978), was decided by this Court in an April 25, 1983, Memorandum Opinion, Civil Action No. 3–81–0266–H. The parties and issues being identical, the Court adopts its prior decision in *Baylor University Medical Center v. Schweiker,* 563 F.Supp. 1081, in its entirety as it relates to labor and delivery area costs. Accordingly, Plaintiff's Motion for Summary Judgment on the labor/delivery area issue is GRANTED, and Defendant's Motion for Summary Judgment on this issue is DENIED.

## Return on Equity

The Medicare Act's [1] central reimbursement section provides that Medicare providers will be reimbursed their "reasonable costs" in providing health care to Medicare beneficiaries. 42 U.S.C. § 1395x(v)(1)(A). The Secretary of Health and Human Services is directed to issue regulations determining which costs are reasonable. *Id.* On June 2, 1966, the Secretary published proposed regulations establishing "reasonable cost" reimbursement principles. 31 Fed. Reg. 7864 *et seq.* Included in the proposed regulations was what is presently codified as 42 C.F.R. § 405.428, which provided for "an allowance amounting to two percent of costs allowed under the other [Medicare reimbursement] principles ... as an element of reasonable cost ... in lieu of a specific interest return on equity capital as well as other factors not given specific recognition [in these regulations]". 31 Fed.Reg. 7871.

On June 27, 1969, the Secretary repealed 42 C.F.R. § 405.428. 34 Fed.Reg. 9927–9928. The Secretary concedes that the notice and comment procedures of the Administrative Procedures Act were not observed in repealing the two percent return on equity allowance. *Id.*

## Contentions of the Parties

Baylor argues that the Secretary's repeal of the two percent return on equity allowance contravenes the Medicare Act and its legislative history, and that the Secretary's action in repealing the two percent allowance was in violation of the Administrative Procedure Act ("APA").

The Secretary contends that her action in withdrawing the two percent allowance for non-proprietary providers did not violate the Medicare Act, and was consistent with the Act's legislative history and amendments. The Secretary cites several recent decisions, all supporting her position on the

1. Pub.L. No. 89–97, Title I, § 102(a), 79 Stat. 313.

substantive return on equity issue.[2] Concerning the procedural return on equity issue, the Secretary asserts that she was exempt from APA rules when she repealed the two percent allowance. Before it reaches the substantive issues, the Court feels it is necessary to consider the procedural aspects of the Secretary's action.

### Rule Making History

In June 1966 when the Secretary issued the proposed regulations which originally included the two percent return on equity allowance, the Secretary stated in the preamble of the regulations that:

> Notice is hereby given, pursuant to the Administrative Procedure Act ... that the regulations set forth in tentative form below are proposed by the Commissioner of Social Security, with the approval of the Secretary of Health, Education and Welfare ....
>
> Prior to the final adoption of the proposed regulations, consideration will be given to any data, views, or arguments pertaining thereto which are submitted ... within a period of 30 days from the date of publication of this notice in the *Federal Register.*

31 Fed.Reg. 7864. The proposed regulations were adopted in final form in November 1966, the preamble of the final regulations acknowledging that the proposed regulations, including the two percent allowance, were filed, public comments received, changes in the proposed regulations made, and final regulations adopted, all in accordance with APA requirements. 31 Fed.Reg. 14808.

In June 1969, the Secretary repealed 42 C.F.R. § 405.428, the two percent allowance, without following APA notice and comment procedures. In defense of her action the Secretary stated in the notice repealing the regulation:

This amendment is prepared to conform to the Department of Health, Education and Welfare budget policy for fiscal 1970 in implementation of the President's Review of the 1970 Budget which was released on April 15, 1969, by the Executive Office of the President. For this reason, it is determined that compliance with the notice, public procedure, and effective date requirements of the Administrative Procedure Act, 5 U.S.C. § 553, is unnecessary.

34 Fed.Reg. 9927.

### Statutory Framework

The applicable portions of the APA provide that:

> General notice of proposed rule making shall be published in the Federal Register .... After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments .... After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of the basis and purpose.

5 U.S.C. § 553. In certain specific instances agencies are able to avoid these notice and comment APA requirements "to the extent that there is involved ... a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a). Agencies are also exempt from APA notice and comment rules "when the agency for good cause finds ... that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).

### Return on Equity—The Two Percent Solution

APA procedural guidelines "were designed to assure fairness and mature consideration" of agency rule making, *NLRB v.*

---

**2.** *Indiana Hospital Association v. Schweiker,* 544 F.Supp. 1167 (N.D.Ind.1982); *Hospital Authority of Floyd County, Georgia v. Heckler,* 707 F.2d 456 (11th Cir.1983); and *Saline Community Hospital Association v. Schweiker,* 554 F.Supp. 1133 (E.D.Mich.1983); *St. Francis Hospital Center v. Heckler,* 714 F.2d 872 (7th Cir. 1983) (per curiam *affirming* 544 F.Supp. 1167 (S.D.Ind.1982)).

*Wyman-Gordon Company,* 394 U.S. 759, 764, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709 (1969). This Circuit has pointed out that:

Congress realized that an agency's judgment would be only as good as the information upon which it drew. It prescribed these procedures to ensure that the broadest base of information would be provided by those most interested—and perhaps best informed—on the subject of the rulemaking at hand.

*Brown Express, Inc. v. United States,* 607 F.2d 695, 701 (5th Cir.1979). APA notice and comment procedures were also intended to assure that a rule making agency considers relevant facts and information. *National Association of Home Health Agencies v. Schweiker,* 690 F.2d 932, 949 (D.C.Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983).

■ The APA notice and comment requirements are specifically applicable to the repeal of a rule: " 'rule making' [as defined in the APA] means agency process for formulating, amending or repealing a rule . . . ." 5 U.S.C. § 551(5).[3] In fact, where an agency decision, which was originally adopted in full compliance with APA notice and comment procedures, is reversed in the absence of notice and comment, such a decision is to be examined closely by the courts. *N.R.D.C. v. U.S. E.P.A.,* 683 F.2d at 760–1. "It would be meaningless to require notice and a reasonable opportunity to participate in rulemaking, if after announcement of a rule, the agency could closet its intent to reconsider and completely undo the rule first made." *Arlington Oil Mills, Inc. v. Knebel,* 543 F.2d 1092, 1100 (5th Cir.1976).

Here, the Secretary used APA notice and comment procedures to promulgate the regulation granting non-proprietary Medicare providers a two percent return on equity allowance. Two years later, however, the Secretary repealed this regulation without using APA notice and comment procedures. The Secretary argues that her action repealing the regulation was exempt from APA notice and comment requirements since it involved a "benefit" program, thus qualifying for exemption from APA notice and comment under 5 U.S.C. § 553. (See Defendant's Reply Brief at 17–18.)

■ Granted, some pre-1971 Medicare regulations may qualify for an exemption from APA rule making procedures under the "benefits" exception to section 553(a)(2).[4] However, as recently noted by the Supreme Court, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency at the time of rule making". *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* —— U.S. —— at ——, 103 S.Ct. 2856 at 2870, 77 L.Ed.2d 443 (1983); *Burlington Truck Lines v. United States,* 371 U.S. 156, 168–9, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207 (1962); *S.E.C. v. Chenery,* 332 U.S. 194, 196, 1575, 1577, 91 L.Ed. 1995 (1945). Here, as noted above, the Secretary did not in any fashion cite the "benefits" exception of 5 U.S.C. § 553(a)(2) as her rationale for failing to use APA notice and comment procedures to repeal the Medicare two percent allowance for non-proprietary providers. Accordingly, longstanding administrative law principles prohibit the Secretary from claiming the "benefits" exception for the first time in this court to justify previous actions which were not, at the time, based on the "benefits" exception. As the Supreme Court has recently stated: "the courts may not accept . . . *post hoc* rationalizations for agency action." *Motor Vehicles Manufacturers Association v. State Farm, supra,* —— U.S. at ——, 103 S.Ct. at 2870; *Burlington Truck Lines v. United States,* 371 U.S. at 168, 83 S.Ct. at 245–6.

---

3. *See also, Natural Resources Defense Council v. U.S. E.P.A.,* 683 F.2d 752, 762 (3d Cir.1982); *Consumer Energy Council of America v. FERC,* 673 F.2d 425, 446 (D.C.Cir.1982).

4. In 1971 the Secretary of HEW waived the "benefits" exemption to the APA for future rulemaking. Thus, pre-1971 Medicare regulations might be exempt under the "benefits" exception, but only if such exemption was claimed at the time the rulemaking action was taken. *See* discussion *infra.*

Even if the Secretary could avail herself of the "benefits" exception, this Circuit has held that agency action which has a substantial impact on affected parties, as this regulation's repeal most obviously does, is subject to notice and comment procedures. *See, e.g., Brown Express, Inc. v. United States,* 607 F.2d at 701–2; *National Association of Home Health Agencies v. Schweiker,* 690 F.2d at 949.

While not argued in this case by the Secretary, the only other exception which could serve as a basis for the Secretary's repeal of the Medicare regulation at issue is the "good cause" exception of 5 U.S.C. § 553(b)(B) set forth above. Invocation of the "good cause" exception is implicit in the Secretary's explanation that the two percent allowance was being revoked to conform with the President's 1970 Budget, and that compliance with the APA was therefore "unnecessary". 34 Fed.Reg. 9927.

■ The Court is of the opinion that the Secretary's haste to comply with President Nixon's 1970 Budget Review is not a sufficient "good cause" to excuse compliance with established APA procedures. Furthermore, this Circuit has previously held that "the mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause for a section 553(b)(B) exception." *U.S. Steel Corp. v. U.S. E.P.A.,* 595 F.2d 207, 213 (5th Cir.1979). Where a legislative or judicial timetable does not constitute good cause to ignore the APA, President Nixon's internal executive timetable for the release of the 1970 budget presents an even weaker attempt at constituting good cause to disregard the APA.

The Fifth Circuit has adopted the well-established rule that the APA's statutory exceptions from notice and comment procedures should be narrowly construed. *U.S. Steel Corp. v. U.S. E.P.A.,* 595 F.2d at 214. The narrow reading which this Circuit has given the good cause exception to the APA, when considered alongside the Supreme Court's stated concern with the importance of adherence to APA procedural requirements, and the Secretary's weak excuse for ignoring APA procedures when repealing 42 C.F.R. § 405.428, prohibits the Secretary's repeal of the two percent return on equity allowance for nonproprietary Medicare providers from qualifying for the good cause exception to APA procedures.

■■ The Secretary's action in repealing the two percent allowance in 1969 was a violation of the APA, and should be declared invalid. Questions may arise as to the timeliness of the Court's ruling in this case, being 14 years after the Secretary's invalid action. These questions are not totally without merit. However, the Secretary points out in her brief that she "has broad authority in designing the regulations under the Social Security Act," and that her regulations interpreting the Medicare Act should be granted great deference by the courts. This deference has been recognized by the Supreme Court. *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). With such broad authority to interpret through regulations which are afforded great deference, it is crucial that the Secretary adhere to Congressionally mandated procedures for promulgating such weighty regulations. The procedures which must be followed are the notice and comment rules of the APA. Thus, where, as here, the Secretary clearly violates APA notice and comment procedures, a delay in bringing the violation to the courts' attention should not prevent judicial enforcement of the APA's requirements.

Baylor's delay in challenging the Secretary's repeal of the two percent allowance has not proven to be unfair to the Secretary. Baylor has forfeited reimbursement under § 405.428 for FYE 1969–1978 since those cost report years are closed. Despite the Secretary's invalid repeal of § 405.428, Baylor cannot challenge the millions of dollars in reimbursement denied through the Secretary's action. In addition, as the Supreme Court has explained in a similar situation, and as the D.C. Circuit has pointed out in the Medicare reimbursement context:

if [powers are] granted, they are not lost by being allowed to be dormant, any

more than nonexistent powers can be pre-scripted by an unchallenged exercise. *United States v. Morton Salt Co.,* 338 U.S. 632, 647, 70 S.Ct. 357, 366, 94 L.Ed. 401 (1950); *National Association of Home Health Agencies v. Schweiker,* 690 F.2d at 948. Baylor's statutory right to challenge the Secretary's invalid repeal of § 405.428 for FYE 1979 is not lost by Baylor's failure to challenge in the past. Similarly, the Secretary's non-existent power to repeal § 405.428 without APA procedures could not arise from Baylor's prior failure to challenge the Secretary on this issue.

 Despite the acknowledged complexity of some policy areas, such as the Medicare reimbursement system, the Supreme Court recently struck down Congress' attempts to use the "legislative veto" as a means to supervise the implementation of complicated statutory policies. *I.N.S. v. Chadha,* — U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). The APA, on the other hand, is a valid exercise of Congressional authority over administrative policy making. The APA violates neither the presentment clause, nor the constitutional principles of bicameralism or the separation of powers. As the APA is the only existing, constitutionally legitimate means for Congress to deal with the implementation of complex statutory policies, blatant agency avoidance of mandatory APA procedures should not be condoned by the courts. Furthermore, in spite of the acknowledged complexity of the Medicare reimbursement system, "[w]e nevertheless cannot abdicate our role in the regulatory process." *Gulf South Insulation v. United States Consumer Products Safety Commission,* 701 F.2d 1137, 1150 (5th Cir.1983).

Where, as here, a court finds that an agency has violated the APA by failing to follow notice and comment procedures, the "reviewing court shall ... hold unlawful and set aside agency action found to be without observance of procedure required by law." 5 U.S.C. § 706(2)(D). *See also Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979). The Court is therefore of the opinion that the Secretary's repeal of the two percent allowance was invalid, and the Plaintiff's Motion for Summary Judgment on the issue of the two percent allowance for return on equity capital should be granted for the reasons herein stated.

Accordingly, Plaintiff's Motion for Summary Judgment is hereby GRANTED, and the Defendant's Motion for Summary Judgment is hereby DENIED.

SO ORDERED.