The WASHINGTON HOSPITAL CENTER, et al., Plaintiffs,

v.

Margaret M. HECKLER, Defendant.

GEORGETOWN UNIVERSITY HOSPITAL, George Washington University Hospital, Plaintiffs,

v.

Margaret M. HECKLER, Defendant.

Civ. A. Nos. 83–2341, 83–2830.

United States District Court, District of Columbia.

Jan. 5, 1984.

---

Ronald N. Sutter, Powers, Pyles, Sutter & O'Hare, Washington, D.C., for plaintiffs.

Ellen Lee Park, Asst. U.S. Atty., Washington, D.C., and Sheree R. Kanner, Washington, D.C., for defendant.

## MEMORANDUM

BRYANT, District Judge.

Civil Action No. 83–2830 is before the court on cross-motions for summary judgment; for purposes of this ruling it is consolidated with C.A. No. 83–2341, which came before the court on cross-motions for partial summary judgment. The plaintiffs, nonprofit hospitals, challenge the repeal of a Medicare regulation by the Secretary of HEW in 1969. They contend that notice and opportunity to comment should have been provided in accordance with the informal rulemaking provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 553; they also claim that the agency failed to justify the repeal adequately and that the decision was therefore arbitrary and capricious. The Secretary argues that the challenged regulation fell under the "grants and benefits" exemption of the APA, and that in any event, objections to the repeal at this late date are barred by laches. Upon consideration of all of the submissions of the parties, the court grants the motions of the Secretary.

### I. *Background*

The regulation in question was promulgated on November 22, 1966, along with a package of rules defining the methods and criteria for reimbursement of "providers," i.e. institutions which provide services to Medicare patients. Generally the rules implement the statutory requirement that providers be reimbursed for the "reasonable cost" of their services, 42 U.S.C. § 1395f(b). Under the regulatory scheme providers normally submit an annual cost report to a fiscal intermediary (usually a private insurer such as Blue Shield) in order to obtain reimbursement. 42 C.F.R. §§ 405.406(b), 405.453(f).

A percentage of a provider's allowed cost was to be added to its annual reimbursement under 42 C.F.R. § 405.428.[1] This allowance had two components. A portion of it was to cover costs which may have escaped specific recognition due to "lack of percision [sic] in methods for determining costs at the present stage of development of cost finding." 31 Fed.Reg. 14816. The remainder was "in lieu of a specific interest return on equity capital." 31 Fed.Reg. 7871. The amount of the allowance was 2% of the provider's costs, reduced to 1½% in the case of proprietary providers, which were given a specific interest return on equity under 42 C.F.R. § 405.429. *Id.*

The 2% (and 1½%) allowance was an attempt to "attract hospitals to the [Medicare] program and ... to insure the adequacy of the financial incentive." *Hospital Authority of Floyd County v. Heckler*, 707 F.2d 456, 458 (11th Cir.1983). The allowance was "tolerated" during the initial stages of Medicare, *id.*, then repealed on June 27, 1969, for cost reporting periods beginning after June 30th of that year. No notice or opportunity to comment was provided before the repeal, although those procedures had accompanied the promulgation of the package of rules in 1966. A brief explanation of the repeal and the lack of APA procedure was given in the Federal Register:

This amendment is prepared to conform to the Department of Health, Education, and Welfare budget policy for fiscal 1970 in implementation of the President's Review of the 1970 Budget which

---

**1.** The Medicare regulations were originally codified in Title 20 of the Code of Federal Regulations. To avoid confusion, however, all citations will be to Title 42, the title in which Medicare regulations are currently codified.

was released on April 15, 1969, by the Executive Office of the President. For this reason, it is determined that compliance with the notice, public procedure, and effective date requirements of the Administrative Procedure Act, 5 U.S.C. 553, is unnecessary. [*Id.*]

Two of the plaintiffs in C.A. No. 83–2341 claimed entitlement to the 2% allowance on their 1980 cost reports; the plaintiffs in C.A. No. 83–2830 claimed the 2% allowance on their cost reports for 1981. All of the plaintiffs in C.A. No. 83–2341 had claimed entitlement to a return on equity and, in a paper filed with the Provider Reimbursement Review Board (the Board) in 1982, relied on the 2% allowance as an alternative method for computing the amount of their entitlement.

On July 22, 1983, the Board held that it lacked the authority to decide the substantive issues regarding return on equity. On July 28th the Board held that it lacked the authority to decide the procedural validity of the repeal of the 2% allowance. The present cases were filed in this court within the 60-day period allowed by statute.

II. *Discussion*

The plaintiffs contend that the Secretary should have provided notice and opportunity to comment before repealing the 2% allowance, as required generally for informal rulemaking. But rulemaking under the Medicare Act was not subject to notice and comment requirements prior to 1971; only then did the Secretary expressly waive the "grants and benefits" exemption of the APA.[2] *Humana of South Carolina v. Califano,* 590 F.2d 1070, 1084 (D.C.Cir. 1978). The grants and benefits exception thus would seem to extend to the repeal of the 2% allowance in 1969. The plaintiffs, however, offer several reasons why the exception does not apply.

**2.** The exemption applies to any matter "relating to agency management or personnel or to public property, loans, *grants, benefits,* or contracts." 5 U.S.C. § 553(a)(2) (emphasis added).

**3.** *See Rivera v. Patino,* 524 F.Supp. 136 (N.D.Cal. 1981). *But see Vermont Yankee Nuclear Power*

■ First, the plaintiffs note that the Secretary did not mention the grants and benefits exception in the notice of repeal. Invoking the exception at this stage, they argue, constitutes "post hoc rationalization." But this argument misconstrues the issue. The question is whether notice and comment procedure was required at all; if not, no explanation (post hoc or otherwise) was required for failing to provide it. *See St. Joseph Hospital v. Heckler,* 570 F.Supp. 434, 439 (N.D.Ind.1983).

■ The plaintiffs also argue that the repeal had "substantial impact" on providers. It is unclear, however, that the substantial impact doctrine applies in this context. Traditionally the substantial impact test is used to distinguish between substantive rules and those which are merely interpretative, procedural, or general statements of policy, hence exempt from notice and comment requirements under 5 U.S.C. § 553. *See Association of National Advertisers v. FTC,* 617 F.2d 611, 629 n. 20 (D.C.Cir.1979) (Wright, J., concurring). The grants and benefits exception does not depend on any such substance-procedure test. *See Humana of South Carolina,* 590 F.2d at 1082.

■ Moreover, even if the substantial impact test is relevant in some grants-and-benefits cases,[3] it is not relevant here. The plaintiffs in this case failed to protest the repeal of the 2% allowance for over a decade. They apparently did not claim the allowance on their cost reports before 1980, nor did they at any time petition the agency under 5 U.S.C. § 553(e).[4] They did not take their claim to court until 1983—fourteen years after the repeal—although they could have done so immediately, *see Humana of South Carolina,* 590 F.2d at 1080. This apparent acquiescence on the plaintiffs' part, for which no justification is of-

*Corp. v. NRDC,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

**4.** "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).

fered, belies any claim of "substantial impact."

■ The plaintiffs further contend that the Secretary, by electing to promulgate the 2% allowance rule according to § 553 rulemaking procedure, was bound to employ that procedure before repealing the rule. This is essentially a waiver argument, for which the court finds no authority. The plaintiffs rely on *Environmental Defense Fund, Inc. v. Gorsuch*, 713 F.2d 802 (D.C.Cir.1983); but the issue in that case was whether EPA inaction rose to the level of rulemaking at all, in which case § 553 procedures applied. Here the agency action is obviously a rulemaking. *See* 5 U.S.C. § 551(5). The question is whether it is nevertheless exempt; and under the grants and benefits exception, it is.

■ The court therefore holds that the Secretary was not obligated to provide notice and opportunity to comment before repealing the 2% allowance.[5] Likewise, the court rejects the plaintiffs' contention that the Secretary was obligated to explain the reasons for the repeal more fully. The repeal was exempt from the APA requirement of a "concise general statement of [its] basis and purpose," 5 U.S.C. § 553(c), just as it was exempt from the notice and comment requirements. Nevertheless the agency provided a brief but clear statement in the Federal Register, thus going beyond what the APA required. This court declines to compel the agency to go even further beyond the APA than it did, by requiring a more detailed statement. Such a requirement would be especially inappropriate in light of the broad discretion afforded the Secretary under the Medicare Act. *See St. Joseph Hospital v. Heckler*, 570 F.Supp. at 439 (discussing *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981)).[6]

■ The court, then, rejects the plaintiffs' procedural arguments; in addition, there is a further reason for granting summary judgment in favor of the Secretary, having to do with the nature of the 2% allowance. The allowance was, at least in part, a return on equity, *see* section I, *supra*. In substance, too, return on equity seems to be what the plaintiffs are seeking.[7] But courts which have reviewed the legislative history have uniformly held that the Medicare Act does not authorize a return on equity for nonprofit providers. *See Saline Community Hospital Association v. Schweiker*, 554 F.Supp. 1133 (E.D.Mich. 1983); *Indiana Hospital Association, Inc. v. Schweiker*, 544 F.Supp. 1167 (S.D.Ind. 1982), *aff'd sub nom. St. Francis Hospital Center v. Heckler*, 714 F.2d 872 (7th Cir. 1983); *Hospital Authority of Floyd County v. Schweiker*, 522 F.Supp. 569 (N.D.Ga. 1981), *aff'd*, 707 F.2d 456 (11th Cir.1983). These cases settle any substantive issue regarding return on equity: the Secretary is not authorized to include a return on equity in a nonprofit provider's reimbursement, as part of a general allowance or otherwise.

■ The plaintiffs, then, seek a result under which the Secretary would violate the Medicare Act. But the APA requires courts to *strike down* agency actions which constitute "an abuse of discretion" or are

---

5. The contrary conclusion is arrived at in *Baylor Univ. Medical Center v. Schweiker*, 571 F.Supp. 374 (N.D.Tex.1983), but this court finds that case unpersuasive.

6. The plaintiffs argue that the defendant failed to consider the practices of third-party payors, as she is required to do under 42 U.S.C. § 1395x(v)(1)(A). The mere fact that the explanatory statement did not refer to third-party payor practice, however, is not sufficient evidence of this. Moreover, the 2% allowance was itself an adaptation of third-party payor practice, *see* 31 Fed.Reg. 14816; it is unlikely that

the Secretary was unaware of that fact when the rule was repealed.

7. The plaintiffs in C.A. No. 83–2341 indicated as much to the Provider Reimbursement Review Board, *see* section I, *supra;* they also assert entitlement to a return on equity in their complaint in this action. No substantive claim is made for unidentified costs (the other component of the 2% allowance)—not surprising in light of the fact that it has been 17 years since the "stage of development" at which "lack of percision [sic]" was thought to exist, 31 Fed.Reg. 14816. *See* section I, *supra*.

"otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). It would be directly contrary to the APA, as well as the Medicare Act, for this court to *require* an agency action which would fit just that description.

An appropriate order shall issue.

## ORDER

Upon consideration of the submissions of the parties and for the reasons discussed in the memorandum accompanying this order, it is hereby

ORDERED that C.A. No. 83–2830 and C.A. No. 83–2341 be consolidated, insofar as they concern the repeal of the former 20 C.F.R. § 405.428 (containing the "2% allowance"); further

ORDERED that the motions of the plaintiffs in C.A. No. 83–2830 and C.A. No. 83–2341 for summary judgment and partial summary judgment, respectively, be denied; and further

ORDERED that the motions of the defendant in C.A. No. 83–2830 and C.A. No. 83–2341 for summary judgment and partial summary judgment, respectively, be granted.