**BAYLOR UNIVERSITY MEDICAL CENTER, Plaintiff-Appellee,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellant.**

No. 83–1853.

United States Court of Appeals, Fifth Circuit.

April 26, 1985.

James A. Rolfe, U.S. Atty., Dallas, Tex., Anthony J. Steinmeyer, Carlene V. McIntyre, Attys., Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Burford & Ryburn, Catherine A. Gerhauser, Stephen N. Wakefield, R.B. Cook, Jr., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and RUBIN, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal arose initially out of a determination by the Secretary of Health and Human Services ("Secretary" or "HHS") concerning the amount of reimbursement allowable to Baylor University Medical Center ("Baylor") under title XVIII of the Social Security Act ("Medicare Act"), 42 U.S.C. §§ 1395–1395xx (1982). Dissatisfied with the agency's outcome, Baylor sought review of the Secretary's final decision in federal district court pursuant to § 1395oo (f) of the Medicare Act. With the parties' cross-motions for summary judgment before it, the judge below concluded first that the Secretary had erroneously calculated

the hospital's routine service costs, and second that the Secretary had invalidly disallowed the hospital's inclusion of a return on equity capital in its claimed reimbursable costs. The court accordingly entered judgment on behalf of Baylor.

Having decided the first issue in favor of Baylor in reviewing the hospital's reimbursement claim for a different fiscal year, we affirm as to the computation of routine service costs. *Baylor University Medical Center v. Heckler*, 730 F.2d 391 (5th Cir. 1984) (per curiam). We reverse on the second ground, however, and hold under both the Administrative Procedure Act ("APA" or "Act"), 5 U.S.C. §§ 551, 553 (1982), and the Medicare Act that the Secretary did not improperly deprive the hospital from a return on its equity capital.

## I. BACKGROUND

In 1965, Congress amended the Social Security Act to establish federal health insurance for the aged and disabled, a program popularly known as Medicare. Pub.L. No. 89–97, 79 Stat. 286 (codified as amended at 42 U.S.C. §§ 1395–1395xx (1982)). Part A of the Medicare Act, *id.* §§ 1395c to 1395i–1, provides health insurance for hospital and related post-hospital costs to persons sixty-five or older. Under this program, "providers of services," such as appellee Baylor, do not charge beneficiaries directly but instead receive reimbursement from the Medicare trust fund for services provided. *Id.* §§ 1395d, 1395x(e), (u), 1395cc(a), (e). While the stat-

ute directs that providers are entitled to reasonable costs actually incurred in connection with furnishing hospital services to beneficiaries of the Medicare program, *id.* §§ 1395f(b), HHS is left the task of defining what is "reasonable," *id.* § 1395x(v)(1)(A).

In June of 1966, one month prior to the effective date of the Medicare Act, the Secretary initiated rulemaking proceedings in accordance with the notice and comment requirements of the APA, 5 U.S.C. § 553(b), (c).[1] Exercising its delegated role to define reasonable costs, the agency published in the Federal Register and invited public comment on a proposed regulation that allowed a two-percent reimbursement of costs allowable under other reimbursement principles (excluding interest expense). 31 Fed.Reg. 7864 (1966). This allowance was in lieu of an amalgam of factors not otherwise given specific recognition, including an "interest return on equity capital."[2] *Id.* at 7871. By the time the rule was published in final form, it provided for the two-percent allowance, except with regard to proprietary providers, who were limited to a one and one-half percent allowance.[3] In June of 1969, the Secretary, citing implementation of the President's review of the 1970 budget, repealed the non-proprietary providers' two-percent allowance without opportunity for public comment. 34 Fed.Reg. 9927 (1969). The Secretary failed to state any APA exemption as justification for not complying

---

**1.** Although the Secretary contends that the 1966 promulgation complied neither with § 553's requirement of stated basis and purpose nor with the section's 30-day publication rule, *see Brief for Appellant* at 23 n. 11, the district court found that the regulations were adopted "in accordance with APA requirements." 571 F.Supp. 374, 377 (N.D.Tex.1983). We assume for purposes of this appeal that the Secretary did comply with notice and comment procedures in 1966, but, as the discussion below reveals, the assumption of full compliance does not alter our result.

**2.** The regulations define "equity capital" generally as a "provider's investment in plant, property, and equipment related to patient care" as well as the "[n]et working capital maintained for necessary and proper operation of patient

care activities." 42 C.F.R. § 405.429(b)(1) (1984).

**3.** The two-percent allowance regulation as published in November 1966 provided in relevant part:

(a) *Principle.* In lieu of specific recognition of other costs in providing and improving services, an allowance amounting to 2 percent of allowable costs (with the exception of interest expense and the allowance under this principle) is includible as an element of reasonable cost of services except that, for proprietary providers, the allowance shall be 1½ percent of allowable costs (with the exception of interest expense, the allowance under this principle and the return allowed on equity capital). 31 Fed.Reg. 14,816 (1966).

with informal rulemaking requirements in connection with this repeal. Apparently because Congress expressly sanctioned the allowance for a return on equity capital for proprietary providers, 42 U.S.C. § 1395x(v)(1)(B),[4] the Secretary left intact the one and one-half percent allowance for the proprietary facilities.

The Secretary's 1969 repeal thus gave rise to a disparity. Currently, the regulations entitle only proprietary providers to a return on equity capital. Because Baylor is a nonproprietary provider, here lies the rub.

In September of 1980, Baylor's fiscal intermediary[5] issued a notice of program reimbursement for the fiscal year ending June 30, 1979. The notice objected to Baylor's claim of $2,584,259 as a return on equity capital.[6] At the ensuing hula hoop of agency review, see 42 U.S.C. § 1395oo (a), the Provider Reimbursement Board ("PRRB" or "Board") affirmed the intermediary's determination of the return on equity capital issue, reasoning that the Medicare reimbursement regulations plainly distinguished between proprietary and nonproprietary providers. In light of the distinction, the Board held that Baylor was not entitled to a return on equity capital. This position was affirmed by the Deputy Administrator of the Health Care Financing Administration, whose decision represented the final order of the Secretary.

Baylor filed a complaint in federal district court seeking review of the Secretary's decision pursuant to 42 U.S.C. § 1395oo (f)(1). In considering the parties' cross-motions for summary judgment, the court held that the Secretary's 1969 repeal had run afoul of the APA's notice and comment requirements. 571 F.Supp. 374, 380 (N.D.Tex.1983). The court reasoned first that the repeal merited close examination because notice and an opportunity for comment had been afforded incident to the rule's promulgation in 1966. Acknowledging that the APA exempts regulations dealing with "benefits," the court declined to apply that exemption to the Secretary's repeal because the agency had failed to articulate it as a basis for not complying with informal rulemaking procedures at the time of repeal. The court stated that "longstanding administrative law principles" prohibited the agency from successfully invoking this type of post hoc rationalization for having failed to comply with the APA.

Alternatively, the court concluded that even if the benefits exemption applied, the regulation's repeal had a substantial impact on the affected parties, thereby taking the regulation outside the benefits exemption and requiring notice and an opportunity for comment. Moreover, the court held that the stated reason for repealing the regulation—the need to comply with the President's budgetary constraints—did not constitute "good cause" for purposes of the good cause exemption from informal

---

4. Section 1395x(v)(1)(B) states in pertinent part that the Secretary's regulations

shall include provision for specific recognition of a reasonable return on equity capital.... The rate of return ... for determining the reasonable cost of any services furnished in any fiscal period shall not exceed one and one-half times the average of the rates of interest ... on obligations issued for purchase by the Federal Hospital Insurance Trust Fund.

The Conference Report stated that the amendment contemplated a reduction of the Secretary's proposed two-percent allowance for proprietary providers to one and one-half percent, but made no express mention of an allowance for non-proprietary institutions. Conf.Rep. No. 2317, 89th Cong., 2d Sess. 166, *reprinted in* 1966 U.S.Code Cong. & Ad.News 3692.

5. To obtain reimbursement, providers submit annual cost reports to fiscal intermediaries, who are charged by the Secretary with making initial reimbursement determinations. 42 C.F.R. §§ 405.405, .406 (1984). Fiscal intermediaries are usually private insurance companies that contract with the Secretary as her agent for purposes of reviewing claims and awarding reimbursement. *See* 42 U.S.C. § 1395h.

6. The intermediary also took exception to Baylor's exclusion of labor and delivery room days in its computation of routine service costs. As noted above, we disposed of this issue in *Baylor University Medical Center v. Heckler,* 730 F.2d 391 (5th Cir.1984) (per curiam).

rulemaking under the APA. Finally, the court noted that because the Secretary's violation of the APA was so clear, "a delay in bringing the violation to the courts' attention should not prevent judicial enforcement of the APA's requirements." Although the court did not employ the referent "laches," its discussion went on to state that the delay had not proven unfair to the Secretary because the judgment would apply only prospectively. Because the court held the regulation's repeal to have been procedurally flawed and hence invalid, the court did not reach the substantive question whether the agency's repeal was consistent with the Medicare Act. APA noncompliance was sufficient to hold the repeal invalid and to award Baylor its two percent return on equity capital under the 1966 regulation.

We conclude that the agency's 1969 repeal fell within the benefits exemption from notice and comment rulemaking and that the agency was therefore justified in not complying with the procedural strictures of the APA. In addition, we hold that the repeal did not violate the substantive requirements of the Medicare Act. Before reaching the merits, however, we pause first to consider whether as an equitable matter Baylor's slumbering challenge to the agency's repeal remained vital some eleven years after the fact.[7]

## II. LACHES

Under the doctrine of laches,[8] an otherwise meritorious suit must be dismissed where there has been an inexcusable delay in bringing the claim for relief and where the delay has unreasonably prejudiced the defendant. " 'The defendant must show: (1) a delay in asserting the right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.' " *Environmental Defense Fund, Inc. v. Alexander,* 614 F.2d

---

7. The Secretary argues in addition that the district court lacked jurisdiction to decide Baylor's claim for the two-percent allowance because the hospital failed to raise it as an issue separate from its claim for a return on equity capital in its cost report to the fiscal intermediary, before the PRRB, and before the Deputy Administrator. *See Saline Community Hosp. Ass'n v. Secretary of Health & Human Servs.,* 744 F.2d 517 (6th Cir.1984); *St. Mary of Nazareth Hosp. Center v. Department of Health & Human Servs.,* 698 F.2d 1337 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983); *Athens Community Hosp., Inc. v. Schweiker,* 686 F.2d 989, *modified on rehearing,* 743 F.2d 1 (D.C.Cir.1984); 42 U.S.C. § 1395oo(d), (f). We find, however, that although Baylor presented its claim for the two-percent allowance under the rubric of a claim for return on its equity capital, the assertion of the two-percent provision was implicit in its request before the fiscal intermediary, *see St. Francis Hosp. Center v. Heckler,* 714 F.2d 872 (7th Cir.1983) (per curiam) (discussing relationship between two-percent allowance and return on equity provision), *cert. denied,* — U.S. —, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *Hospital Auth. of Floyd County v. Heckler,* 707 F.2d 456, 458 (11th Cir. 1983) (per curiam) (same); *Washington Hosp. Center v. Heckler,* 581 F.Supp. 195, 197–98 (D.D.C.1984) (same), and that indeed the hospital's position paper before the PRRB expressly urged the applicability of the two-percent allowance. Record vol. A, at 148–50; *see* 42 U.S.C. §§ 1395f,

1395g; 42 C.F.R. 405.453(f). The issue was therefore squarely presented and preserved for both administrative and judicial review. *See, e.g., Heckler v. Ringer,* — U.S. —, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

8. Although the Secretary urges a laches defense for the first time on appeal, the district court noted of its own accord the glaring interval between the 1969 challenged agency action and Baylor's 1982 petition in federal court. Laches is generally waived if not raised in the pleadings. *United States v. One (1) 1963 Hatteras Yacht Ann Marie,* 584 F.2d 72, 76 (5th Cir.1978); Fed.R.Civ.P. 8(c), 12. While this court generally will not consider an affirmative defense not raised below, *FMC Finance Corp. v. Murphree,* 632 F.2d 413, 419 (5th Cir.1980), we are not prevented from doing so where the district judge sua sponte chose to address the issue, *Youakim v. Miller,* 425 U.S. 231, 234–35, 96 S.Ct. 1399, 1401–02, 47 L.Ed.2d 701 (1976) (per curiam); *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *cf. Martinez v. Food City, Inc.,* 658 F.2d 369, 372 n. 1 (5th Cir.1981); *Stone v. Morris,* 546 F.2d 730, 736 (7th Cir.1976). *See generally* 4 C.J.S. Appeal & Error § 233, at 699, 700. The utility of this practice is manifest where, as in this case, a party's failure to argue a point would otherwise deprive the court of a potentially dispositive decisional tack.

474, 478 (5th Cir.) (quoting *Save Our Wetlands, Inc. (SOWL) v. United States Army Corps of Engineers,* 549 F.2d 1021, 1026 (5th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977)), *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980). Laches will bar stale claims challenging agency rulemaking. *E.g., Independent Bankers Association v. Heimann,* 627 F.2d 486 (D.C.Cir.1980) (per curiam).

Persuasive arguments exist that each of the first two criteria is satisfied. Baylor's delay is obvious, and the hospital—a Medicare participant in 1969—proffers no excuse for its having failed to contest the repeal sooner. If our analysis encompassed no more than the first two elements, our conclusion would reflect our intuition: that this plaintiff is equitably barred from seeking relief based on a claim that arose over a decade prior to suit.

 We are unable to discern, however, how the Secretary's alleged fiscal prejudice would arise from anything other than an adverse decision on the merits. Laches contemplates harm resulting from delay; prejudice does not arise "merely because one loses what otherwise he would have kept." *In re Bohart,* 743 F.2d 313, 327 (5th Cir.1984). The repeal's invalidation would operate only prospectively from the time of decision in this case, *see Pickus v. United States Board of Parole,* 507 F.2d 1107, 1114 (D.C.Cir.1974) (per curiam denial of petition for rehearing), and the eleven-year interim between the repeal and the claim has no effect on the agency's administration of the Medicare program: any effect would stem from a decision that the Secretary is proscribed by its own flawed inaction from withholding the two-percent allowance from a claimant provider. Thus, while the Secretary states that, "[E]ven if applied only prospectively, [resurrection of the two-percent allowance] works a significant prejudice against the Secretary's cost-

efficient administration of the Medicare program," *Brief for Appellant* at 41, any prejudice would arise essentially from a decision on the merits invalidating the repeal rather than from the hospital's delay in bringing suit. The Secretary cannot make out a defense of prejudicial delay from the budgetary implications of its statutory and regulatory obligation to grant a return on equity capital. *Cf. Villa View Community Hospital, Inc. v. Heckler,* 720 F.2d 1086, 1094 (9th Cir.1983) ("The Secretary cannot deny reimbursement simply to save money.").

## III. APA COMPLIANCE

The Administrative Procedure Act requires federal agencies to afford notice and an opportunity for comment incident to the issuance or repeal of substantive or legislative rules. 5 U.S.C. §§ 551(5), 553. In recognition of the potential burden posed by a blanket requirement for informal rulemaking, however, Congress excepted several categories of rules from APA rulemaking requirements.[9] Thus, section 553(a)(2) of the Act exempts from those requirements any "matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." The Secretary contends that Medicare reimbursement regulations such as that articulating the two-percent allowance fall within the APA's benefits exemption, and we agree.

 Because courts generally read exceptions from notice and comment narrowly, *United States Steel Corp. v. EPA,* 595 F.2d 207, 214 (5th Cir.1979); *American Federation of Government Employees v. Block,* 655 F.2d 1153, 1156 (D.C.Cir.1981); *Joseph v. United States Civil Service Commission,* 554 F.2d 1140, 1153 n. 23 (D.C.Cir.1977), the substantive categories listed in section 553(a)(2) are operative only to the extent that "any one of the enumer-

---

**9.** Congress enacted the benefits exemption on the theory that "the principal considerations in most such cases relate to mechanics and interpretations of policy, and it is deemed wise to facilitate the issuance of rules by dispensing

with all mandatory procedural requirements." S.Rep. No. 752, 79th Cong., 1st Sess. 13 (1945); *see also* H.R.Rep. No. 1980, 79th Cong., 2d Sess. 23 (1946).

ated categories is 'clearly and directly' involved in the regulatory effort at issue." *Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, 1082 (D.C.Cir.1978) (citation omitted).[10] The Medicare program, which was designed to recompense the aged and disabled for their medical expenses, reimburses providers for their reasonable costs as a primary means by which it repays its ultimate beneficiaries. Regulations addressing the method and amount of provider reimbursement are clearly and directly related to the disbursement of benefits through the Medicare program. We concur with the other courts of appeals that have considered the issue, each of which has held the benefits exemption applicable to provider reimbursement regulations promulgated pursuant to the Medicare Act. *Good Samaritan Hospital v. Mathews,* 609 F.2d 949 (9th Cir.1979); *Humana,* 590 F.2d at 1082–84; *see St. Francis Memorial Hospital v. United States,* 648 F.2d 1305, 1308, 227 Ct.Cl. 307 (1981).[11]

Although the district court acknowledged that the benefits exemption might have applied to Medicare regulations promulgated prior to the Secretary's 1971 waiver, the court held that the Secretary's failure to cite section 553(a)(2) as its justification for eschewing notice and comment foreclosed the agency from now relying on the exemption. 571 F.Supp. at 378. Moreover, the district court held that even if the benefits exemption were applicable, the 1969 repeal had a "substantial impact on affected parties," thereby subjecting it to notice and comment procedures. *Id.* at 379. Neither argument, however, circumvents the exemption.

 Where the benefits exemption obviates the need to comply with informal rulemaking procedures, an agency need not state any justification for not affording notice and an opportunity to comment on the proposed action.[12] A court's role in reviewing an agency decision not to extend informal rulemaking procedures is to ascertain whether the APA required such procedures. The inquiry exists independent of the question of stated agency justifications: the procedures either were required or they were not, and if not, no explanation by the agency was required for having failed to provide them. *Accord Washington Hospital Center v. Heckler,* 581 F.Supp. 195, 199 (D.D.C.1984); *Bedford County General Hospital v. Heckler,* 574 F.Supp. 943, 946 (E.D.Tenn.1983), *aff'd,* 757 F.2d 87 (6th Cir.1985); *St. Joseph Hospital v. Heckler,* 570 F.Supp. 434, 439 (N.D.Ind.1983). *But see Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 n. 9 (3d Cir.1969).

 Our conclusion is consistent with the structure of section 553, which expressly requires an agency to state both its finding of "good cause" and its reasons for claiming the good cause exemption of subsection (b)(B),[13] but which fails similarly to

10. *See generally* Bonfield, *Public Participation in Federal Rulemaking Relating to Public Property, Loans, Grants, Benefits, or Contracts,* 118 U.Pa. L.Rev. 540, 556 (1970).

11. The paucity of decisions construing the applicability of the benefits exemption to HHS regulations under the Medicare Act is due to the Secretary's waiver in 1971 of exemption from notice and comment requirements under § 553(a)(2). 36 Fed.Reg. 2532 (1971). Because the agency's repeal of the two-percent allowance occurred prior to the Secretary's waiver, Baylor cannot avail itself of the agency's acquiescence to informal rulemaking in such cases.

12. Similarly, an agency does not forfeit its claim to exemption from notice and comment requirements in repealing a regulation by virtue of its voluntary compliance with such procedures when the regulation was promulgated. *Accord Malek-Marzban v. INS,* 653 F.2d 113, 116 (4th Cir.1981) (past compliance with rulemaking procedures does not forfeit preprogative of exemption under the Act).

13. Section 553(b)(B) provides that notice and comment rulemaking is not required "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." Because we hold that the Secretary's repeal of the two-percent allowance was exempt from informal rulemaking requirements under the benefits exemption of § 553(a)(2), we do not address whether the repeal was also exempt for good cause.

condition an agency's invocation of one of the exempted areas listed in subsection (a)(2). The absence of phrasing in subsection (a)(2) analogous to that in the ensuing subsection is conspicious evidence of Congress's intent to demand nothing by way of publication or debate for regulations falling within the reach of subsection (a)(2). *See United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972) (per curiam). Our role is to do no more than apply the terms of section 553(a)(2), which expressly exempts rules within its scope from notice, opportunity for comment, and statement of a rule's basis and purpose at the time of adoption, *see* 5 U.S.C. § 553(c).

 Nor do the buzz-words "post hoc rationalization" come into play. Broadly speaking, agencies cannot bolster ostensibly invalid regulatory action with after-the-fact explanations as to the regulation's validity. "[A]n agency's action must be upheld, if at all, on the basis articulated by the agency at the time of the rule making." *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983); *American Textile Manufacturers Institute v. Donovan*, 452 U.S. 490, 539, 101 S.Ct. 2478, 2505, 69 L.Ed.2d 185 (1981); *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). The disallowance of post hoc rationalization of agency action is shorthand for the principle that the substantive validity of regulatory action may be buttressed only by the reasons proffered at the time the action is taken. *See Global Van Lines, Inc. v. ICC*, 714 F.2d 1290, 1299 n. 8 (5th Cir.1983).

 For instance, the APA requires that rules subject to informal rulemaking

procedures be proposed with reference to the legal authority under which they are promulgated and that they be adopted with a general statement of basis and purpose. 5 U.S.C. § 553(b)(2), (c). These requirements serve essentially two functions: one, to allow interested parties to comment in an informed way on the substantive validity of a proposed rule, and two, to enable courts to assess on review the legal and factual framework underlying an agency's action. *See Global Van Lines*, 714 F.2d at 1298; *American Standard, Inc. v. United States*, 602 F.2d 256, 269, 220 Ct.Cl. 411 (1979); *see also Rodway v. United States Department of Agriculture*, 514 F.2d 809, 816–17 (D.C.Cir.1975) (noting that statement of basis and purpose responds to public comment and creates record for appellate review). The realization of these twin goals would be frustrated by a principle of judicial review that allowed an administrative agency to rely on reasons for past action that it was unable or unwilling to articulate at the time the action was taken.

 Applied in the present context, the principle against post hoc rationalization is as a fish out of water. Where the issue is one of compliance with the procedural requirements of the APA, rather than with the substantive mandate of an agency's enabling legislation, a rule's validity or invalidity turns solely on whether the agency in fact complied with the Act.[14] *North Carolina Commission of Indian Affairs v. United States Department of Labor*, 725 F.2d 238, 240 (4th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984). The existence or absence of stated justifications for failure to follow notice and comment is irrelevant where Congress has not required such elaboration. By stating its budgetary reason for repeal of the two-percent allowance, the Secretary went beyond what was required

---

**14.** The situation thus resembles those cases upholding agency action whose stated basis, while flawed, did not deprive the agency of its authority in fact. *See, e.g., Massachusetts Trustees v. United States*, 377 U.S. 235, 248, 84 S.Ct. 1236, 1245, 12 L.Ed.2d 268 (1964) ("the Commission's failure to indicate ... the source of its power is without legal significance"); *NLRB v. American Geri-Care, Inc.*, 697 F.2d 56, 64 (2d Cir.1982) (reversal and remand appropriate only where agency error likely to have produced different result), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 807 (1983).

by the APA. That the agency chose to announce its reason for repeal does not undermine its statutory justification for providing no comment whatsoever. For us to engraft a requirement that an agency state its basis and purpose in claiming exemption from the APA would be to abuse our role as interpreters—not common law architects—of the statute. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); *United States Department of Labor v. Kast Metals Corp.,* 744 F.2d 1145, 1152–55 & n. 19 (5th Cir.1984).

■ Having found the benefits exemption applicable to the Secretary's 1966 repeal, we reject appellee's argument that the regulation's "substantial impact" on affected parties nonetheless required notice and comment rulemaking. The substantial impact test is not a vehicle for imposing judicial notions of procedural propriety over and above what the APA mandates. As we recently stated:

The substantial impact test is no more than the rubric under which courts construe the terms of the APA. Because the words "substance" and "procedure" defy ready application, the test represents, albeit imperfectly, the judicial at-

tempt to pour content into their use. Viewed in this way, the concept does not engraft anything; it explains much.

*Kast Metals,* 744 F.2d at 1154 n. 19 (citation omitted); *see also American Transfer and Storage Co. v. ICC,* 719 F.2d 1283, 1285 (5th Cir.1983); *Lamoille Valley R.R. Co. v. ICC,* 711 F.2d 295, 328 (D.C.Cir. 1983); *Cabais v. Egger,* 690 F.2d 234, 237 (D.C.Cir.1982); *Brown Express, Inc. v. United States,* 607 F.2d 695, 700–03 (5th Cir.1979). We are not presently faced with the task of defining the generic terms "substantive," "procedural," and "interpretive" for purposes of applying the exemption from informal rulemaking under section 553(b)(A). Rather, our sole task is to ascertain whether the HHS regulation clearly and directly related to "benefits" as that word is used in section 553(a)(2). Even if we were to assume as valid Baylor's assertion of a substantial impact from the 1969 repeal,[15] we would be unable to override Congress's choice not to require notice and an opportunity for comment under such circumstances. *Vermont Yankee,* 435 U.S. at 524, 98 S.Ct. at 1202.[16]

**IV. MEDICARE ACT COMPLIANCE**

■ Appellee argues in the alternative that even if the Secretary's 1969 repeal

---

**15.** The line of cases suggesting that sudden and unannounced departures from longstanding agency practice must be accompanied by informal rulemaking is inapposite under the present circumstances. *See, e.g., National Ass'n of Home Health Agencies v. Schweiker,* 690 F.2d 932 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983); *American Trucking Ass'n v. United States,* 688 F.2d 1337 (11th Cir.1982), *rev'd on other grounds,* — U.S. ——, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984); *Donovan v. Huffines Steel Corp.,* 645 F.2d 288 (5th Cir.1981), *aff'g mem.* 488 F.Supp. 995 (N.D. Tex.1979); *see also Motor Vehicle Mfers. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 542, 98 S.Ct. 1197, 1210, 55 L.Ed.2d 460 (1978). When the Secretary repealed the two-percent allowance in 1969, the agency had been committed for only a short time to the substantive practice of allowing such reimbursement to nonproprietary providers, and the agency had not disavowed its interest in

exemption under § 553(a)(2). The two-percent allowance had been adopted only three years earlier, and the exemption's waiver did not occur until 1971.

Moreover, the hospital's eleven-year failure to challenge the repeal would seem to belie any contention of substantial impact arising from the agency's action.

**16.** We also find *Vermont Yankee's* "compelling circumstances" caveat to be inapposite. In *Vermont Yankee,* the Supreme Court stated that "[a]bsent constitutional constraints or compelling circumstances the 'administrative agencies' should be free to fashion their own rules of procedure...." 435 U.S. at 543, 98 S.Ct. at 1211. The circumstances of this case are no more compelling than in any other case where an administrative agency validly chooses not to afford informal rulemaking procedures. To the extent *Vermont Yankee* contained within its terms the possibility of judicially engrafted procedures, the exception is narrower than appellee can divine on the facts of this case.

was consistent with the procedural requirements of the APA, withdrawal of the two-percent allowance for nonproprietary providers violated the regulatory mandate of the Medicare Act. Baylor has not convinced us that the Medicare Act forbade the Secretary from repealing the two percent allowance. The party challenging agency rulemaking bears the burden of persuasion with regard to a rule's substantive invalidity.[17] In construing the propriety of an agency's regulatory action, our interpretation of the enabling legislation is qualified in the first instance by deference to the interpretation of the agency charged with administering the statute. *Blum v. Bacon,* 457 U.S. 132, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982); *Batterton v. Francis,* 432 U.S. 416, 423–25, 97 S.Ct. 2399, 2404–05, 53 L.Ed.2d 448 (1977). The Secretary's regulations will be sustained as long as they are reasonably related to the purposes of the enabling legislation. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973); *Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 325 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). Of course, this deference must nevertheless yield where our analysis produces a contrary meaning of the statute as revealed through its plain language, purpose, and history. *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979).

■■■ The thrust of Baylor's argument is that the provision for reasonable cost allowance contained in 42 U.S.C. § 1395x(v)(1)(A) necessarily comprises a two-percent allowance for nonproprietary providers. While the language of the statute does not foreclose the hospital's position, the statute's structure and history does. The Medicare legislation already allows proprietary providers a one and one-

half percent return on equity capital. *Id.* § 1395x(v)(1)(B). Added after the reasonable costs provision, section 1395x(v)(1)(B) is an exception to the statute's guiding principle that reimbursement be limited to the costs actually incurred in providing services to Medicare patients. *Sun Towers,* 725 F.2d at 325. Baylor points to no provision in the statute nor definitive statement in the legislative history that Congress intended reasonable costs to include by necessity the two-percent return allowance for nonproprietary providers. Since we cannot meaningfully add to the thoughtful discussions that have preceded our consideration of the issue, we simply endorse the reasoning of those courts that have confirmed the substantive validity of the Secretary's 1969 repeal. *See St. Francis Hospital Center v. Heckler,* 714 F.2d 872 (7th Cir.) (per curiam), *cert. denied,* — U.S. —, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *Hospital Authority of Floyd County v. Heckler,* 707 F.2d 456 (11th Cir.1983) (per curiam); *see also Valley View Community Hospital v. United States,* 679 F.2d 857, 230 Ct.Cl. 581 (1982); *Washington Hospital Center,* 581 F.Supp. at 199; *St. John's Hickey Memorial Hospital v. Heckler,* Nos. 82–931–C, 83–92–C (S.D.Ind. June 7, 1984); *Memorial Hospital of Carbondale v. Heckler,* No. 82–4200 (S.D.Ill. May 8, 1984); *Saline Community Hospital Association v. Schweiker,* 554 F.Supp. 1133 (E.D.Mich.1983), *rev'd on other grounds,* 744 F.2d 517 (6th Cir.1984). The Medicare Act does not require HHS to reimburse nonproprietary providers for a return on their equity capital.

## V. CONCLUSION

We find that the Secretary's 1969 repeal of the two-percent allowance for non-proprietary providers' return on equity capital did not overstep the requirements of the APA. Since, in addition, we cannot say

---

17. Baylor sought judicial review of the Secretary's decision pursuant to 42 U.S.C. § 1395oo (f), which requires that we apply the standard of review applicable to actions arising under the APA. We are thus empowered to invalidate the Secretary's action if it exceeded the agency's

statutory authority or if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C); *see City of Austin, Texas, Hosp. v. Heckler,* 753 F.2d 1307, 1313 (5th Cir.1985) (per curiam).

that the repeal was inconsistent with the terms or purpose of the Medicare Act, appellee Baylor is not entitled to its claimed reimbursement for a percentage of its equity capital. Having elsewhere affirmed the district court's ruling on the validity of the Secretary's computation of routine service costs, we do so again here.

AFFIRMED IN PART and REVERSED IN PART.