**TEXAS BANKERS ASSOCIATION, et al., Plaintiffs,**

v.

**NATIONAL CREDIT UNION ADMINISTRATION, Defendant,**

and

**Communicators Federal Credit Union, et al., Defendant/Intervenors.**

Civ. A. No. 94–1650.

United States District Court, District of Columbia.

May 31, 1995.

Michael S. Helfer, A. Douglas Melamed, and William P. Donovan, Jr., Wilmer, Cutler & Pickering, Washington, DC, for plaintiffs (Kelly S. Rodgers, Texas Bankers Ass'n, Austin, TX, of counsel).

Arthur R. Goldberg and Jessica A. Lerner, Federal Programs Branch, U.S. Dept. of Justice, Washington, DC, for defendant.

Paul J. Lambert and Teresa Burke, Bingham, Dana & Gould, Washington, DC, for defendant/intervenors.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before the Court are cross motions for summary judgment concerning the propriety of the National Credit Union Administration's ("NCUA") approval of the expansion of the jurisdiction of Communicators Federal Credit Union ("Communicators") to include seven unrelated occupational groups and a "regional senior citizen/retiree association". After consideration of the briefs, and arguments made at the April 28, 1995 motions hearing, the Court concludes that the NCUA properly approved the addition of unrelated occupational groups to Communicators. On the other hand, we determine that the NCUA's approval of the expansion of Communicators to include the "regional senior

citizen/retiree association" was improper. Accordingly, defendant's and defendant/intervenors' motions for summary judgment are granted in part and denied in part and plaintiffs' motion for summary judgment is denied in part and granted in part.

## I. Background

This is the second time the Court stands on the fault line between national banks and federal credit unions.[1] Credit unions receive certain preferred treatment, such as tax exempt status, that banks believe give credit unions a competitive advantage. See 12 U.S.C. § 1768 (tax exemption). Banks have looked to the "common bond provision," section 109 of the Federal Credit Union Act ("FCUA"),[2] in their attempts to limit the expansion of credit unions. The common bond provision holds that "Federal credit union membership shall be limited to groups having a common bond of occupation or association, or to groups within a well-defined neighborhood, community or rural district." § 1759. Both cases before this Court relate to this provision.

In the earlier case, First Nat'l Bank & Trust Co. v. Nat'l Credit Union Admin., 863 F.Supp. 9 (D.D.C.1994), appeal docketed, No. 94–5295 (D.C.Cir. Sept. 30, 1994) ("First Nat'l"), we considered the extent to which unrelated groups, each with a common bond among its members, could join the same credit union. For ease of reference we will refer to this as the "multiple group policy." We concluded that the statute was ambiguous in this regard, and deferred to the reasonable interpretation of the NCUA. The present case requires consideration of both the multiple group policy at issue in First Nat'l, and whether the senior citizen/retiree group at issue has an associational common bond to support its inclusion by Communicators.

Defendant-intervenor Communicators is a Houston, Texas based federal credit union which currently serves 93 different groups

---

**1.** A federal credit union is defined by statute as a "cooperative association organized ... for the purpose of encouraging thrift among its members and creating a source of credit for provident or productive purposes." 12 U.S.C. § 1752(1).

**2.** 12 U.S.C. § 1751 et seq., particularly § 1759.

with a membership of 38,283.[3] At issue are several expansions to Communicators which the NCUA approved between September 1993 and February 1994.[4] Seven expansion groups which were added under the multiple group policy are unrelated occupational groups. These groups are composed of employees in particular businesses. The eighth group, also allegedly joined under the multiple group policy, is more complex. It is a purported association covering all retirees or senior citizens [5] living or working within a 25 mile radius of Communicators' offices.

Plaintiffs opposing these expansions are six state and federally chartered commercial banks in competition with Communicators and two trade associations representing the interests of commercial banks in Texas. Plaintiffs seek injunctive and declaratory relief vacating the additions as "arbitrary and capricious, and an abuse of discretion" under the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). The matter has been extensively briefed by all parties, the chief emphasis being on the propriety of Communicators' attempted inclusion of the senior citizen/retiree group.

Using defendants' more conservative figures, the senior citizen/retiree group adds to the credit union approximately 478,000 potential members in three nearby Texas counties. The NCUA has attempted to justify the addition of so large and varied a group of senior citizens on the basis of its so-called "senior/citizen retiree" policy, first adopted in 1984. *See* Interpretive Ruling and Policy Statement ("IRPS") 84–1, 49 Fed.Reg. 46,536. The NCUA forthrightly acknowledged in IRPS 84–1 that

> legitimate concern has been expressed that simply authorizing Federal credit unions to

serve all senior citizens and retirees in their area may not meet the statutory requirement of an occupational or associational common bond.

*Id.* at 46,539. This concern, while commendable for its candor, understates the NCUA's problem given its rather restrictive requirements of an associational common bond. The NCUA limits putative associations to those "who participate in activities developing common loyalties, mutual benefits, and mutual interests." 59 Fed.Reg. 29,076. In determining whether a group satisfies these requirements, the NCUA understandably considers "the totality of the circumstances," including whether "members pay dues, have voting rights, ... hold office, whether the group maintains a membership list, ... the frequency of meetings and ... interaction of members," and the "compactness" of the group's membership.[6] *Id.* On the other hand, "[a]ssociations formed primarily to obtain a credit union charter do not have a sufficient associational common bond." 54 Fed.Reg. 31,168–69.

Nevertheless, the NCUA adopted a policy encouraging credit unions to admit senior citizens into credit unions they could not otherwise lawfully join. 54 Fed.Reg. at 31,177. Existing credit unions are encouraged to "sponsor and assist" in the formation of regional associations of senior citizens who would then be able to join established credit unions under the multiple group policy. *Id.* The NCUA waived the normal rules excluding associations formed solely for purposes of securing credit union services.[7] The NCUA justified this policy because those over 50 years of age allegedly have a common bond that

---

3. The two other intervenors are Texas Credit Union League and Credit Union National Association, Inc.

4. Defendant NCUA is the agency of the United States government charged with administering the FCUA.

5. Defined as anyone over the age of 50. IRPS 94–1, 59 Fed.Reg. 29,083. This expansion was approved under an earlier policy which left the definition of "senior citizen" to each organization. IRPS 89–1, 54 Fed.Reg. 31,177.

6. Recognizing that these standards are not easily met, the NCUA cautions that "a new group's efforts are best focused on solidifying member interest before attempting to offer credit union service." *Id.*

7. The NCUA created a separate exception for certain low-income groups. That policy is not at issue in this case.

arises both from the members' common status as senior citizens and retirees—with similar financial concerns and needs arising from their later stage in life—and from the members' common interest in obtaining credit union service as a group from a particular credit union in their geographic region. Defendant NCUA's motion for summary judgment, p. 20.

Senior citizens in the Houston area are encouraged to join the newly created "Credit Union Link" ("CUL"). Defendants candidly concede that this purported association had no mission other than to secure credit union membership in Communicators for those over the age of 50. The activities of CUL are limited—when Communicators' employees indicate on the senior citizen's application that he or she has joined CUL, a "personalized welcome letter" and key chain are sent to the senior citizen, and there are purported plans to hold brown bag lunches to discuss "credit union services". Austin Affidavit submitted with Intervenor's motion for summary judgment at ¶¶ 13–16. The NCUA claims that this regional association, predicated on such minimal activities, has a requisite common bond among its "members."

## II. *Analysis*

Fed.R.Civ.P. 56(c) permits a court to grant summary judgment where, as is the case here, the evidence in the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ Our review of the NCUA's interpretation of the FCUA is governed by the familiar two part test announced in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under the first prong of *Chevron*, the Court must determine whether it can ascertain Congress' intent on the precise issue before it. *Northwest Airlines, Inc. v. U.S. Dept. of Transportation*, 15 F.3d 1112, 1118 (D.C.Cir.1994). Under the second prong of *Chevron*, the Court must defer to the agency's interpretation if Congress' intent is not clear and that interpretation is

reasonable in light of the statutory language, history, and policies of the statute. *National Recycling Coalition, Inc. v. Browner*, 984 F.2d 1243, 1250–51 (D.C.Cir.1993) (citing *NRDC v. EPA*, 822 F.2d 104, 111 (D.C.Cir. 1987)).

### A. *The NCUA's approvals under the multiple group policy.*

■ Plaintiffs have asked the Court to reconsider its holding in *First Nat'l* that the common bond provision could reasonably be interpreted to allow the addition to the same credit union of unrelated groups, each with its own common bond. 863 F.Supp. at 14. This we decline to do. "The inquiry is not how the [parties] would prefer to construe this statute, but whether the agency's construction is permissible." *Community First Bank v. National Credit Union Administration*, 41 F.3d 1050, 1055 (6th Cir.1994) (internal quotation marks omitted). We concluded that Congress intended a flexible interpretation of the common bond as necessary to promote stable credit unions. 863 F.Supp. at 13; *c.f. Community First Bank*, 41 F.3d at 1055 ("statute does not define a common bond, but gives the NCUA authority to regulate credit union membership"). The NCUA's multiple group policy is reasonable because it furthers the overall goals of the FCUA while continuing to require the members of each group to share a common bond. The common bond provision remains a limitation on how credit unions can expand, albeit a limitation not interpreted as banks would prefer. Accordingly, the Court, consistent with its earlier decision in *First Nat'l*, approves the addition of the seven employee groups to Communicators. We turn now to Communicators' attempted inclusion of a regional senior citizen/retiree association. As has been indicated previously, this aspect of the dispute has been the chief emphasis of all the parties to this litigation.

### B. *Addition of regional senior citizen/retiree association.*

Although our analysis refers to the NCUA's overall senior citizen/retiree policy, the Court focuses specifically on the application of that policy to the facts in this case.

The agency's interpretation begins from the premise that there need not be a common bond or purpose beyond securing credit union services. The NCUA also argues that, even if § 1759 requires a greater common bond than formal credit union membership, individuals in the Houston area who are over 50 years of age have such a bond based solely on their age.

### 1. Formation of an association for the sole purpose of securing credit union services.

The NCUA correctly notes that Congress did not define the term "association". The dictionary broadly defines the term "association" as "[a]n organized group of people who share a common interest, activity, or purpose." *Webster's II New Riverside University Dictionary ("Webster's")*, p. 132 (definition 2). In defendants' view, nothing in the statute or the dictionary definition of "association" explicitly prohibits Communicators from encouraging the formation of an association, even if the association is formed solely to expand the credit union. Defendants encourage the Court to uphold the NCUA's expansive interpretation of "association" because it promotes the overall congressional goal of encouraging credit union membership.

■ It is not in dispute that the common bond provision is to be interpreted flexibly. *First Nat'l*, 863 F.Supp. at 13; *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (court must look to both the particular statutory language and the language and design of the statute as a whole). However, the NCUA's interpretation would read the common bond provision completely out of the statute.

■ We start with the NCUA's premise that an otherwise unassociated group of individuals can qualify as an association when their sole common interest is membership in a credit union. We have no difficulty concluding that such a group does not have a common bond. Even defendants must concede that the presence of the common bond

provision acts as some limitation on the pool of potential credit union members. However, the NCUA's interpretation of the common bond of association would remove any limitation. Those who seek to join a credit union would by that very desire become eligible to join an association. We cannot agree with such a position which would make meaningless the common bond provision. "It is an elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 510, 106 S.Ct. 2039, 2046, 90 L.Ed.2d 490 (1986) (citation and internal quotation marks omitted). An association, for purposes of the FCUA, must have a common interest, activity, or purpose beyond that of securing access to credit unions.

■ This conclusion that an association must have a common bond beyond its members' desire to join a credit union is bolstered by the maxim *noscitur a sociis*, "a word is known by the company it keeps." *Sweet Home Chapter v. Babbitt*, 17 F.3d 1463, 1465 (D.C.Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 714, 130 L.Ed.2d 621 (1995) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961)).

> [W]hile not an inescapable rule, [the maxim] is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.

*Id.* Words in a list should also be given related meanings. *Sweet Home Chapter*, 17 F.3d at 1466 (citing *Dole v. Steelworkers*, 494 U.S. 26, 36, 110 S.Ct. 929, 935, 108 L.Ed.2d 23 (1990)). Associations are included in a list of groups that qualify for credit union membership under the common bond provision.[8] The members of each other enumerated groups clearly share a common bond beyond credit union membership. While the bonds of occupation and community may differ, each indicates a greater commonality of interest than does the NCUA's interpretation

---

8. That list is limited to groups united by occupation, association, and groups "within a well-defined" neighborhood, community, or rural district. § 1759.

of association.[9] There is no indication that Congress intended the "association" language in § 1759 to be the unguarded backdoor to credit union membership.

### 2. Common bond between those over 50 years of age.

■ The NCUA has in essence attempted to carve out an exception to its general interpretation of the common bond provision in order to aid a particular class of persons—those over 50 years of age. Of particular relevance is the application of that exception in this case. Defendants argue that we should defer to the agency's interpretation in this regard because it is charged with administering the FCUA. However, the agency must provide more than its own *ipse dixit* for its decision; there must be a rational connection between the factors considered and the decision made. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971).

■ The NCUA claims that CUL, unlike other would-be associations, need not be well-established because "an associational common bond among the members is evident by virtue of the nature of its membership—senior citizens who live or work within a particular region." NCUA opposition, p. 24. However, defendants cite no evidence to support their conclusory statements that Houston area senior citizens and retirees have a commonality based upon their stage in life. *C.f. N.R.D.C. v. U.S. E.P.A.*, 966 F.2d 1292, 1305–06 (9th Cir.1992) (agency pollution exemption for smaller construction sites was arbitrary and capricious when agency presented no information to support its view that development of smaller sites caused minimal damage). We question the premise that a wealthy 51 year old corporate executive experiences financial concerns similar to those felt by a lower middle class retiree struggling to live on a fixed income. Moreover, we seriously doubt that such amorphous "concerns" could satisfy the common bond required of associations. While those older than 50 years of age share a common

physical characteristic, that characteristic alone does not establish a common interest.

Defendants are compelled to acknowledge that Houston senior citizens and retirees have no other particularized bonds. They also lack organization. The NCUA notes that an association is commonly understood as an "organized group" who have "joined" together. *See* NCUA's motion for summary judgment, p. 20 (quoting *Webster's*). However, the senior citizens are not even members of any association until they join Communicators, at which time they become "members" of CUL. This purported association is merely a by-product of membership in Communicators.

There are certainly senior citizens organizations which would qualify as associations under the FCUA. Some of these organizations are no doubt so large that members have little or no personal contact. However, the members of such organizations have actively organized and have united for a common purpose other than securing credit union services and have forged a cohesiveness beyond that of the general populace. Communicators' attempts to create such cohesiveness and common purpose after the fact through key chains and brown bag lunches are artificial and unconvincing. These factors are intrinsic to, and generated by, the credit union, not the members themselves.

The NCUA also would justify the policy exempting senior citizen/retirees from normal regulatory requirements on the grounds that such requirements are allegedly focused on the economic feasibility of the credit union, and are "of less concern when considering the addition of an associational group to an established credit union." 49 Fed.Reg. 46,539. Be that as it may, the NCUA cannot grant exemptions that void the statutory requirements of a common bond. Such an interpretation is clearly erroneous and inconsistent with the statutory plan. If the NCUA is permitted to exempt segments of the Houston population from the common bond provision, there is no limit to its further efforts. In the future it could allow those in

9. Plaintiffs urge us to hold that only preexisting groups can qualify as associations. While we need not so hold for purposes of the instant

motions, as a practical matter, this will normally be the case.

their 20s or those under 40, or even left handed individuals to join credit unions merely because people in these demographic groups allegedly share common concerns.

The undisputed facts of this case show that the senior citizen/retirees in the area serviced by Communicators do not share a common bond of association.[10] We have no difficulty in concluding that the NCUA's approval of Communicators' expansion to CUL violates the common bond provision. The NCUA's interpretation "goes beyond the scope of whatever ambiguity [the statute] contains." *City of Chicago v. Environmental Defense Fund,* —— U.S. ——, ——, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994). Accordingly, we will not defer to the NCUA's decision in this case. The NCUA should petition Congress if it believes that senior citizens, as contemplated here, deserve an exemption from the common bond. *Southwestern Bell Corp. v. Federal Communications Commission,* 43 F.3d 1515, 1519 (D.C.Cir.1995). Summary judgment for plaintiffs is granted on this issue.[11]

## C. *Laches.*

■ In the alternative, defendants argue that plaintiffs' claims against both the multiple group policy and the senior citizen/retiree policy should be barred by the equitable doctrine of laches. This doctrine allows the Court to dismiss a suit in equity if plaintiffs have unreasonably delayed bringing their claims and if such delay causes prejudice. We need not decide whether plaintiffs could directly attack the "senior citizen/retiree policy" so many years after it was promulgated. Plaintiffs do not mount a direct challenge on the policy rules themselves, but on their implementation in this case.

■ The doctrine of laches does not apply to plaintiffs' claims concerning the senior citizen/retiree addition. Plaintiffs brought suit soon after the NCUA granted this application, which for the first time threatens plaintiff banks with competitive injury from the potential addition to Communicators of a large percentage of the general public. Defendants do not allege significant investment in reliance on the senior citizen/retiree expansion. More importantly, any prejudice stems from a decision on the merits invalidating approval of the expansion rather than from plaintiffs' alleged delay in bringing suit. *Baylor University Medical Center v. Heckler,* 758 F.2d 1052, 1058 (5th Cir.1985).

## III. *Conclusion*

We conclude that the NCUA's approval for Communicators to add seven unrelated occupational (employee) groups was a proper exercise of its statutory authority. However, the NCUA's approval for Communicators to add CUL, a purported senior citizen/retiree association, was arbitrary and capricious. Accordingly, we vacate approval of this addition. Communicators may no longer accept senior citizens or retirees seeking to join under this addition.

An order in accordance with this opinion has been issued this date.

## *ORDER*

Upon consideration of Plaintiffs' motion for summary judgment, defendant's motion for summary judgment, and defendant/intervenors' motion for summary judgment, it is this 31st day of May, 1995, hereby

ORDERED that plaintiffs' motion for summary judgment is granted in part and denied in part; and it is

ORDERED that defendant's motion for summary judgment and defendant/intervenors' motion for summary judgment are granted in part and denied in part; and it is

ORDERED that the additions to Communicators Federal Credit Union ("Communicators"), approved by defendant National Credit Union Administration, of seven occupational groups is affirmed; and it is

---

**10.** Whether different circumstances in other areas give senior citizens a common bond is not before this Court.

**11.** Because the segment of the population at issue here so clearly lacks a common bond, we need not address the precise types of common interest that would qualify as a bond of association. We also need not consider whether a credit union may aid in the formation of an otherwise valid association.

ORDERED that the addition to Communicators of a purported "regional senior citizen/retiree association" is vacated; and it is

ORDERED that defendants are permanently enjoined from approving the addition to Communicators of similar "regional senior citizen/retiree associations;" and it is

FURTHER ORDERED that this case is dismissed with prejudice.